UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THE PLUMBING SUPPLY, LLC, d/b/a            :
FAUCET WORKS,                              :
              Plaintiff,          :
v.                                         :
                                           :
EXXONMOBIL OIL CORP., EXXON                :
MOBIL CORP., CPD NY ENERGY                 :
CORP., CUMBERLAND FARMS, INC.,             :    **OPINION AND ORDER**
and JOHN DOES 1-10,                        :
             Defendants.         :    14 CV 3674 (VB)
-------------------------------------------------------------x
CPD NY ENERGY CORP.,                       :
           Third-Party Plaintiff,   :
v.                                         :
                                           :
CUMBERLAND FARMS, INC.,                    :
GROUNDWATER & ENVIRONMENTAL                :
SERVICES, INC., and JOHN DOES 1-10,        :
          Third-Party Defendants.  :
-------------------------------------------------------------x

Briccetti, J.:

       Plaintiff's plumbing supply store sits between two gas stations.  One or both stations has

spilled petroleum that has migrated onto plaintiff's property, contaminating the air, soil, and

groundwater.  This case arises from plaintiff's attempt to compel the responsible party or parties

to remediate the contamination and pay for the property damage caused by the spills.

       Plaintiff sues the current and former owners of the two gas stations, and their insurers.

Additionally, as a third-party plaintiff, the current owner of one gas station sues (i) the current

owner of the other; (ii) its insurers; and (iii) an environmental consulting firm the third-party

plaintiff hired to remediate the contamination of plaintiff's property.  Thus, there are two

operative complaints: plaintiff's Second Amended Complaint ("SAC") (Doc. #158) and

defendant and third-party plaintiff CPD NY Energy Corp.'s ("CPD") First Amended Third Party Complaint ("FATPC").  (Doc. #145).

This opinion addresses three motions currently pending before the Court: (i) defendant and third-party defendant Cumberland Farms, Inc.'s ("CFI") motion to dismiss the SAC[1] (Doc. #147); (ii) CFI's motion to dismiss the FATPC (Doc. #161); and (iii) CPD's partial motion for judgment on the pleadings against the SAC or alternatively for partial summary judgment. (Doc. #175).

For the reasons set forth below, CFI's motion to dismiss the SAC is GRANTED; CFI's motion to dismiss the FATPC is GRANTED in part and DENIED in part; and CPD's partial motion for judgment on the pleadings against the SAC is GRANTED, which moots CPD's motion for partial summary judgment.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).

## BACKGROUND

I.    The Parties

The following undisputed facts are taken from the SAC.

Plaintiff is a domestic limited liability company doing business as a plumbing supply store called Faucet Works, located at 395 White Plains Road in Eastchester, New York.  Plaintiff owns the site of the Faucet Works store, which sits between two gas stations.

CPD has owned and operated the Mobil station immediately north of the Faucet Works site since January 13, 2011.

Defendant ExxonMobil Oil Corp. ("EMOC") owned and operated the Mobil station from at least November 1989 until it transferred ownership to CPD on January 13, 2011.

---

[1]    CFI moved to dismiss the amended complaint, but plaintiff and CFI agreed at a status conference held on September 25, 2015, that the motion was applicable to the SAC instead.

CFI has owned and operated the Gulf station immediately south of the Faucet Works site since September 10, 2003.

Defendant Exxon Mobil Corp. ("EMC") owned and operated the Gulf station from at least September 1986 until March 1, 2000. EMOC is a subsidiary of EMC.

Defendants and third-party defendants John Does 1-10 represent unnamed insurers of CPD, EMOC, CFI, and EMC.

Third-party defendant Groundwater & Environmental Services, Inc. ("GES"), is an environmental consulting firm.

II.    The SAC

In deciding the pending motions with respect to the SAC, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor.

A.    Mobil Station Spill

The SAC alleges petroleum spilled from the Mobil station has migrated onto plaintiff's property. Plaintiff's claims against CPD and EMOC arise from this alleged spill and the subsequent remediation efforts.

Beginning in November 1989, there have been at least nine petroleum spills at Mobil station reported to the New York State Department of Environmental Conservation ("DEC").

Following the November 1989 spill, EMOC investigated the Mobil station site and discovered non-aqueous phase liquids ("NAPL"), or "free-product" petroleum, had contaminated the groundwater.

NAPL can migrate underground and release Volatile Organic Compounds ("VOCs") into the groundwater, some of which are harmful to humans. Spills from gas stations commonly

release the VOCs benzene, toluene, ethylbenzene, and xylene, known collectively as "BTEX." (SAC ¶¶ 69-70).  DEC regulations outlined at 6 N.Y.C.R.R. Part 703.5 ("Groundwater Standards") and the DEC Division of Water Technical and Operational Guidance Series 1.1.1 ("TOGS") set forth maximum levels for these substances' presence in groundwater, above which the water is no longer safe to drink.  (SAC ¶¶ 66-68).

According to the SAC, EMOC did nothing to remediate the 1989 spill until July 2000, when it installed a soil vapor extraction system and began to monitor the presence of VOCs in the groundwater.  Tests from 2001 and 2002 showed the Mobil station site's groundwater was still contaminated by VOCs, and tests from 2001 through 2008 showed the presence of NAPL.

On October 5, 2005, EMC issued a statement with respect to the Faucet Works site,[2] announcing its policy "to be responsible for any loss, claim, damage, or liability . . . that [EMC] determines to have arisen during the period of ownership of the [Faucet Works site][3] as a result of any leak, spill or other discharge of petroleum products or derivatives from [EMC] equipment as a result of the actions of [EMC] or its employees."  (SAC ¶ 80).  Plaintiff claims to have relied on this statement when it purchased the Faucet Works property on April 28, 2006, believing "the Exxon Entities would fulfill its [sic] legal obligations to remediate the Faucet Works site."  (Id. ¶ 81).

On August 7, 2007, plaintiff and EMC entered into a Site Access Agreement ("SAA"), which granted EMC and its agents "the right to perform contamination assessment and

---

[2]    Though not explicitly stated in the complaint, it appears EMC made this statement in its capacity as EMOC's parent company with respect to the Mobil station, not in its capacity as the former owner of the Gulf station.  Indeed, the SAC repeatedly refers to EMC's obligations with respect to the Mobil station even though EMOC was the owner.

[3]    It is unclear whose ownership this refers to, although it does not appear EMC owned the Faucet Works site before plaintiff purchased it.

remediation activities at the Faucet Works site." (SAC ¶ 83). This agreement authorized EMC to test air, groundwater, and soil samples on plaintiff's property for contamination, and to install treatment and ventilation systems on the property.

From August 2007 to March 2008, GES entered plaintiff's property on EMC's behalf to conduct these tests. On May 14, 2008, GES made a report to plaintiff indicating unusually high concentrations of: (i) VOCs in two soil samples taken in September 2007; (ii) BTEX in the groundwater samples taken in March 2008; and (iii) two VOCs in indoor air samples. According to the SAC, this indicated "petroleum concentrations" in the groundwater on plaintiff's property were "elevated above DEC's Groundwater Standards and TOGS." (SAC ¶ 98).

In January 2009, GES installed carbon treatment and ventilation systems in plaintiff's basement to treat the groundwater and air contamination. Plaintiff alleges these were ineffective because GES did not properly maintain them.

CPD assumed ownership of the Mobil station on January 13, 2011.

GES continued to attempt to remediate the contamination on plaintiff's property, now on CPD's behalf. On December 19, 2012, GES took an air sample from the basement and concluded it did not exceed the Occupational Safety and Health Administration's permissible exposure limits for hazardous substances. GES also attributed the VOCs in the air to sources other than petroleum contamination.

In 2012 (the SAC does not give an exact date), plaintiff hired its own environmental consultant, AKRF, Inc. ("AKRF"), to review GES's remedial work. On December 14 and 18, 2012, AKRF inspected plaintiff's property, and concluded that GES's remediation efforts were insufficient in several ways and GES's 2008 and 2012 reports misstated the actual level of contamination.

On May 3, 2013, plaintiff told EMC that GES's remediation had been ineffective and requested more aggressive remediation be taken.  EMC responded that CPD was now responsible for the remediation.  Representatives from plaintiff, AKRF, CPD, and GES met on August 13, 2013, to discuss remediation efforts.  Plaintiff alleges CPD and GES did not improve their remediation efforts after that meeting.

As of April 3, 2014, there are allegedly unsafe VOC and BTEX levels in plaintiff's groundwater and air, and a strong smell of gasoline permeates the Faucet Works building.

B.     Gulf Station Spill

The SAC also alleges petroleum from the Gulf station has migrated onto plaintiff's property.  Plaintiff's claims against CFI and EMC arise from this alleged spill.

At least nine reported petroleum spills have occurred at the Gulf station since September 1986.  Testing done in July 1999 and February 2003 showed elevated VOC concentrations on the Gulf station site.  CFI has made efforts to remediate the spill through at least 2012.

Before this lawsuit, plaintiff never sought to attribute the conditions on plaintiff's property to any spill emanating from the Gulf station.

C.     Plaintiff's Claims

The SAC brings six causes of action under federal and New York law, but only four are subject to the present motions.

First, plaintiff sues CPD, EMOC, CFI, and EMC under Section 181 of the New York Navigation Law (Count 2), which allows a plaintiff to hold dischargers of petroleum strictly liable for cleanup and removal costs caused by a spill.  Plaintiff seeks both "direct and indirect damages, including diminution of property value, and consultant and attorneys' fees."  (SAC ¶ 247).

6

Second, plaintiff sues these four defendants under New York common law for negligence, trespass, and nuisance (Counts 4, 5, and 6), because petroleum allegedly migrated from either the Mobil station or the Gulf station, or both.[4]

III.   The FATPC

In deciding the pending motion with respect to the FATPC, the Court accepts as true all well-pleaded factual allegations in the FATPC and draws all reasonable inferences in CPD's favor.

A.   Factual Background

In the FATPC, CPD alleges the petroleum contamination on plaintiff's property came not from the Mobil station, but rather from the Gulf station owned and operated by CFI, and that since CFI assumed ownership of the Gulf station in 2003, it has not taken the necessary steps to prevent its petroleum discharges from migrating onto the Faucet Works site.

According to the FATPC, GES has been remediating petroleum spills from the Gulf station since 1999 on EMC's behalf.  GES monitored the contamination and made quarterly reports to EMC in 2001 and 2002.  In 2004, GES investigated the basement on the Faucet Works property (before plaintiff owned the property) and concluded the then-existing petroleum contamination on plaintiff's property came from the Gulf station, not the Mobil station.

CPD alleges, based on GES's past experience with the Gulf station and plaintiff's property, as well as GES's 2007-2008 investigation of plaintiff's property, GES knew or should have known in 2008 the contamination on plaintiff's property came from the Gulf station, not the Mobil station.

---

[4]   In Count 1 of the SAC, plaintiff seeks injunctive relief and civil penalties against CPD and EMOC under Section 7002 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972.  In Count 3, plaintiff seeks to hold as-yet-unnamed insurers of CPD, EMOC, CFI, and EMC strictly liable under Section 190 of the New York Navigation Law.

7

On January 13, 2011, the same day CPD assumed ownership of the Mobil station, CPD and GES entered into an agreement regarding GES's ongoing remediation of the contamination on plaintiff's property.  This agreement required GES to "pursue CFI to assume the Faucet Works liability."  (FATPC ¶ 69).

CPD contends, despite GES's knowledge that CFI was responsible for contaminating plaintiff's property, GES never included this information in its reports to CPD.

CPD's explanation for why GES purposely avoided attributing blame to CFI is that GES has a separate and more significant business relationship with CFI.  According to the FATPC, after GES entered into the agreement with CPD to continue remediating plaintiff's property, CFI hired GES to service many other sites CFI owns and operates.  CPD claims CFI instructed GES not to attribute the contamination on plaintiff's property to CFI, despite GES's contractual obligation "to pursue CFI to assume the Faucet Works liability."  (FATPC ¶¶ 69, 118).

As a result, CPD paid for the remediation efforts for which it claims CFI is responsible. Additionally, CPD claims its own property, the Mobil station, has been contaminated by the petroleum discharges originating from the Gulf station.

B.      CPD's Claims

CPD brings ten causes of action against CFI.

First, CPD brings two claims under the Navigation Law: one claim for indemnification and contribution relating to the spill onto plaintiff's property, and a direct claim for spilling petroleum onto the Mobil station property.  (Counts 1 and 2).  CPD seeks to recover "for all clean-up and removal costs and for all direct and indirect damages," including diminution of property value and remediation costs for both plaintiff's and CPD's property.  (FATPC ¶¶ 144, 153).

Second, CPD sues for unjust enrichment (Count 6), alleging CFI was "unjustly enriched by CPD's performance" of CFI's duties to remediate the spill.  (FATPC ¶ 185).

Third, CPD sues to obtain a declaratory judgment (Count 8) ordering CFI to "fully perform and complete [all the] clean-up, removal and remediation of all discharge of petroleum products from the CFI site."  (FATPC ¶ 198).

Next, CPD sues for trespass, nuisance, and negligence (Counts 9, 10, and 13), based on CFI's spilling petroleum onto plaintiff's and CPD's properties.

CPD also sues for tortious interference with contract (Count 15) because CFI allegedly instructed GES not to tell CPD the Gulf station was the source of the spill onto plaintiff's property.

Finally, CPD brings claims against CFI for indemnification and contribution (Counts 18 and 19) in the event plaintiff recovers against CPD.[5]

IV.   Procedural History

Plaintiff initially sued EMOC, CPD, and the John Doe insurers on May 22, 2014. (Doc. #1).  EMOC and CPD each answered on November 17, 2014.  (Docs. ##52, 54).

CPD moved to bring in third-parties CFI, GES, and their insurers on January 12, 2015. (Doc. #61).  The Court granted this motion, and CPD filed a third-party complaint against these parties on May 21, 2015.  (Doc. #111).

On June 15, 2015, plaintiff moved to amend its complaint to add CFI and its insurers as defendants.  (Doc. #117).  The Court granted this motion and accepted the First Amended Complaint for filing on July 10, 2015.  (Docs. ##135, 139).

On July 31, 2015, CPD filed the FATPC.  (Doc. #145).

---

[5]     The FATPC also contains numerous claims against GES, and a Navigation Law § 190 claim against the unnamed insurer defendants.

On August 18, 2015, plaintiff filed the SAC.  (Doc. #158).  The SAC added EMC as a defendant.  CPD answered the SAC on August 21, 2015.  (Doc. #169).

The answers of various defendants and third-party defendants also contain a number of counterclaims and crossclaims not relevant to the motions addressed in this opinion.

## DISCUSSION

I.   <u>Standard of Review</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>accord</u> <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>.

The legal standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and one for judgment on the pleadings under Fed. R. Civ. P. 12(c) are identical.  Hayden v. Paterson, 594 F.3d at 160.

II.      CFI's Motion to Dismiss the SAC

CFI moves to dismiss all claims against it in the SAC because the statute of limitations has expired.  These include strict liability under Section 181 of the New York Navigation Law, negligence, trespass, and nuisance.

   A.      Applicable Statute of Limitations

The parties agree New York statute of limitations law governs the claims against CFI.

"[A]n action to recover damages for an injury to property" must be filed within three years, "except as provided in section 214-c."  N.Y. C.P.L.R. § 214(4).  Section 214-c provides in relevant part, "for injury to property caused by the latent effects of exposure to any substance or combination of substances," the three-year period runs from "the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier."  N.Y. C.P.L.R. § 214-c(2).

Notwithstanding Section 214-c(2), "where the discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury or when with reasonable diligence such injury should have been discovered . . . an action may be commenced . . . within one year of such discovery of the cause of the injury," if plaintiff can show "technical, scientific or medical knowledge and information sufficient to ascertain the cause of [plaintiff's] injury" had not been discovered before the usual three-year period expired.  N.Y. C.P.L.R. § 214-c(4) (emphasis added).

11

This statutory scheme applies to claims based on petroleum spills, whether they are for property damage under the New York Navigation Law, or for negligence, trespass, or nuisance. See, e.g., Hanna v. Motiva Enters., LLC, 839 F. Supp. 2d 654, 657, 663 (S.D.N.Y. 2012) (applying a three-year statute of limitations to all four types of claim).  Nevertheless, plaintiff and CFI disagree about its application to the present case.

### 1.   Negligence, Trespass, and Nuisance Claims

Plaintiff contends Section 214-c(4) applies to its claims for negligence, trespass, and nuisance, and that the applicable statute of limitations therefore is five years from the discovery of the injury—petroleum contamination on plaintiff's property—plus one year from the discovery that CFI caused the injury.  (Opp. Br. at 11-15).

The Court disagrees.

Section 214-c(4) only applies if plaintiff can allege the relevant scientific or technical community lacked the knowledge and information to determine the cause of plaintiff's injury. Wetherill v. Eli Lilly & Co., 89 N.Y.2d 506, 515 (1997).  The SAC contains no such allegation. It is insufficient for plaintiff to allege it did not personally discover CFI had caused the petroleum spill onto plaintiff's property.

Therefore, these claims are timely only if brought within three years of when plaintiff discovered or should have discovered the injury itself.  See N.Y. C.P.L.R. § 214-c(2).

### 2.   New York Navigation Law Claim

Plaintiff argues the statute of limitations for the Navigation Law claim is six years, not three, because the claim is for property damage and reimbursement of cleanup costs.

Plaintiff is incorrect.

The Navigation Law allows recovery both for "all cleanup and removal costs and all direct and indirect damages . . . as defined in this section."  N.Y. Nav. L. § 181(1).  "Cleanup and removal costs" are defined as "all costs associated with the cleanup and removal of a discharge . . . incurred by the state or its political subdivisions or their agents or any person with the approval of the [DEC]."  N.Y. Nav. L. § 172(5) (emphasis added).  Costs incurred without approval from the DEC are therefore not "cleanup and removal costs."  In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig., 2007 WL 1601491, at *18 (S.D.N.Y. June 4, 2007) ("In re MBTE").

Navigation Law claims only have a six-year statute of limitations if they seek "reimbursement of cleanup [and removal] costs."  Bologna v. Kerr-McGee Corp., 95 F. Supp. 2d 197, 204 (S.D.N.Y. 2000); accord Oliver Chevrolet, Inc. v. Mobil Oil Corp., 249 A.D.2d 793, 794-95 (3d Dep't 1998).  Otherwise, the three-year period applies.  Hanna v. Motiva Enters., LLC, 839 F. Supp. 2d at 663.  If there are claims both for reimbursement and for property damage, the statute of limitations is different for each; the existence of a reimbursement claim does not extend the limitations period for a property damage claim.  See In re MBTE, 2007 WL 1601491, at *18; Oliver Chevrolet, Inc. v. Mobil Oil Corp., 249 A.D.2d at 794-95 (dismissing property damage claims as time-barred while allowing reimbursement claims to proceed because of the longer applicable statute of limitations).

Here, plaintiff's Navigation Law claim alleges the "direct and indirect damages" from the petroleum contaminants include "diminution of property value, and consultant and attorneys' fees."  (SAC ¶ 247).

To the extent plaintiff seeks to recover for "diminution of property value," this is clearly a claim for "damages for an injury to property" governed by the three-year statute of limitations.

As for "consultant and attorneys' fees," plaintiff cites no authority, and the court is aware of none, holding these fees qualify as "cleanup and removal costs," rather than "indirect damages," or are subject to a six-year statute of limitations even though a plaintiff incurs no other "cleanup and removal costs." But even if consultant and attorneys' fees generally fall within the definition of "cleanup and removal costs," plaintiff has not pleaded that it sought DEC authorization to incur these costs. Therefore, by definition, they are not "cleanup and removal costs." See In re MBTE, 2007 WL 1601491, at *18.

Accordingly, the Navigation Law claim is subject to the three-year statute of limitations.

B.     Accrual

Based on the allegations contained in the SAC, as a matter of law, plaintiff knew or should have known of the injury from the petroleum spill by January 2009 at the absolute latest. Therefore, the three-year statute of limitations for all claims against CFI began to run then, and expired in January 2012, years before plaintiff sued CFI.

The statute of limitations is an affirmative defense, and the burden is upon defendants to show plaintiff's claim is untimely. Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004). Defendants generally meet this burden by demonstrating when the claim accrued. St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010). Because the burden lies with defendants, "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007). On a Rule 12(b)(6) motion, the Court may dismiss an action based on statute of limitations only if, on the face of the complaint, the claim is clearly untimely. Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999). That is, a plaintiff must "plead[ ] itself out of

14

court." In re marchFIRST Inc., 589 F.3d 901, 904-05 (7th Cir. 2009); see also Harris v. City of New York, 186 F.3d at 250.

Plaintiff alleges by January 2009, it had (i) entered into an agreement with EMOC, allowing GES to "perform contamination assessment and remediation activities" on its property (SAC ¶¶ 82-83); (ii) received GES's May 14, 2008, report indicating petroleum levels "elevated above DEC's Groundwater Standards and TOGS," (id. ¶ 98); and (iii) allowed GES to install treatment systems in the building's basement to address the contaminated groundwater and vapors.

Taken together, these facts from the SAC make it clear plaintiff was or should have been aware by January 2009 that a neighboring gas station had contaminated plaintiff's property with petroleum. See Benjamin v. Keyspan Corp., 104 A.D.3d 891, 892 (2d Dep't 2013) (limitations period began to run when plaintiff learned of test results indicating the presence of contaminants on plaintiff's property); Oliver Chevrolet, Inc. v. Mobil Oil Corp., 249 A.D.2d at 794-95 (limitations period began to run once plaintiff had knowledge that "some amount of [gasoline] leakage had occurred" onto plaintiff's property); see also In re MBTE, 2007 WL 1601491, at *7 (knowledge of the presence of contaminants above the "Maximum Contaminant Level" set by state regulations constitutes actual knowledge of injury).

Plaintiff argues its claims against CFI are not time-barred because "the allegation in the Amended Complaint that there were reported spills on the CFI Site in 2008 does not clearly establish that the date of such spill(s) is the date that Faucet Works discovered the injury caused by the CFI site." (Opp. Br. at 10). Moreover, plaintiff asserts it had no reason to investigate the Gulf station as a possible source for the spill.

This is beside the point.  The claim for property damage accrued when plaintiff discovered or should have discovered the injury, not the cause.  N.Y. C.P.L.R. § 214-c(2); see Bano v. Union Carbide Corp., 361 F.3d 696, 709 (2d Cir. 2004).  Once plaintiff knew about the petroleum in its own building's basement, the statute of limitations began to run regardless of what it knew about the Gulf station.  Therefore, the allegations in the SAC regarding plaintiff's knowledge of the injury are sufficient to show the claims against CFI are time-barred.

Accordingly, all claims against CFI in the SAC are dismissed.

III.     CPD's Motion for Partial Judgment on the Pleadings or Partial Summary Judgment

CPD moves for judgment on the pleadings or summary judgment on the same four claims plaintiff asserted against CFI: strict liability under Section 181 of the Navigation Law, negligence, trespass, and nuisance.  CPD argues all four claims are time-barred.

For the reasons discussed above, see supra Part II, plaintiff's claims are all governed by the three-year statute of limitations, and expired in January 2012.  Because plaintiff commenced this lawsuit in May 2014, CPD has satisfied its burden to prove the claims are time-barred.

However, plaintiff argues CPD should be equitably estopped from asserting a statute-of-limitations defense.

"[E]quitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense."  Zumpano v. Quinn, 6 N.Y.3d 666, 673 (2006) (internal quotation marks omitted).  It is "an extraordinary remedy" to be invoked "only under exceptional circumstances."  Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks omitted).  This doctrine requires plaintiff to prove "the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay

16

bringing timely action." Kaufman v. Cohen, 307 A.D.2d 113, 122 (1st Dep't 2003).  For non-fiduciaries, the misrepresentations "must be affirmative and specifically directed at preventing the plaintiff from bringing suit[;] broad misstatements to the community at large" do not suffice. Twersky v. Yeshiva Univ., 993 F. Supp. 2d at 442.  Moreover, misrepresentations made by third parties unconnected to the defendant cannot support equitable estoppel.  Castel v. Sherlock Corp., 159 A.D.2d 233, 233 (1st Dep't 1990).

There is no allegation CPD had a fiduciary relationship with plaintiff.  Therefore, only actual misrepresentations from CPD directed specifically toward plaintiff can support equitably estopping CPD's statute of limitations defense.

Plaintiff points to three alleged misrepresentations made to mislead it "into believing litigation would be unnecessary."  (Opp. Br. at 6).  First, EMC issued a statement (it is unclear to whom) on October 5, 2005, claiming it was responsible for remediating any damage it caused to plaintiff's property.  Second, EMC and plaintiff entered into the SAA on August 7, 2007, so that GES could evaluate and remediate any contamination in plaintiff's basement.  Third, GES came onto plaintiff's property repeatedly "under the guise of performing remediation."  (Opp. Br. at 6).

None of these alleged misrepresentations supports equitable estoppel against CPD.

CPD itself did not make any of these statements.  Nevertheless, plaintiff argues, CPD can be estopped by the October 5, 2005, statement and the SAA because CPD "expressly assumed Exxon Mobil's liabilities, including . . . under the Statement of Responsibility and Access Agreement."  (Opp. Br. at 10).

This is unpersuasive.  Even if CPD's assumption of EMOC's liabilities constituted a "misrepresentation" of CPD's intention to honor EMC's or EMOC's obligations, this misrepresentation would have been communicated to "the community at large," not directly to

17

plaintiff.  See Twersky v. Yeshiva Univ., 993 F. Supp. 2d at 442.  CPD did not communicate anything directly to plaintiff when it bought the Mobil station on January 13, 2011.  Indeed, plaintiff did not even know CPD was the owner until after it contacted EMOC on May 3, 2013.

Nor did CPD make a misrepresentation to plaintiff by continuing to send GES to plaintiff's property "under the guise of performing remediation."  (Opp. Br. at 6).  The SAC alleges no facts to show CPD intentionally sent GES to plaintiff's property to do a poor remediation job with the express purpose of deceiving plaintiff into not filing suit.

At bottom, plaintiff seeks equitable estoppel because it depended on EMC, EMOC, CPD, and GES to remedy the spill without litigation.  The Court is not unsympathetic to this argument.  But equitable estoppel is not warranted merely because plaintiff's attempts to resolve the problem without litigation failed.  See Bulgartabac Holding AD v. Republic of Iraq, 451 F. App'x 9, 11 (2d Cir. 2011) (summary order); Stark v. City of New York, 31 A.D.3d 530, 531 (2d Dep't 2006).

Accordingly, because equitable estoppel does not prevent CPD from asserting its statute of limitations defense, plaintiff's Navigation Law, negligence, trespass, and nuisance claims against CPD are dismissed as time-barred.

IV.    CFI's Motion to Dismiss the FATPC

CFI moves to dismiss all ten claims CPD has alleged against it in the FATPC.  These will be discussed in turn.

A.    New York Navigation Law Claims

CFI moves to dismiss both Navigation Law claims.  These claims assert CFI spilled petroleum onto (i) plaintiff's property, and (ii) the Mobil station property.

18

The same three-year statute of limitations applies to these claims.  See supra Part II.A.2.

CPD seeks both damages and reimbursement for cleanup and removal costs.  However, as with

plaintiff's Navigation Law claim, the six-year statute of limitations does not apply to the

reimbursement aspect because CPD has not alleged it sought approval from the DEC to incur

these costs.  See In re MBTE, 2007 WL 1601491, at *18.  Thus, they are not "cleanup and

removal" costs recoverable in an indemnification action under the statute.  See id.

Moreover, the limitations period began to run no later than January 13, 2011, when CPD

entered into a contract with GES requiring GES to remediate the petroleum contamination that

had migrated from CPD's property onto plaintiff's property and to "pursue CFI to assume the

Faucet Works liability."  (FATPC ¶ 69).  CPD thus necessarily knew or had reason to know both

its property and plaintiff's property were contaminated on that date.  Knowledge of the injury—

the contamination itself—begins the limitations period, whether or not the cause is known.  See

Bano v. Union Carbide Corp., 361 F.3d at 709.

Therefore, this claim became untimely on January 13, 2014, before CPD sued CFI.

CPD argues it is entitled to equitable estoppel of CFI's statute of limitations defense

because CFI, through GES, misled CPD into thinking CFI was not responsible for the

contamination.

The Court is not persuaded.

Equitable estoppel is not available when, despite a defendant's misrepresentation,

plaintiff has "sufficient information available to require him to investigate whether there [is] a

basis" for the action.  Twersky v. Yeshiva Univ., 993 F. Supp. 2d at 443 (quoting Putter v. N.

Shore Univ. Hosp., 7 N.Y.3d 548, 553 (2006)).  This is because it is unreasonable for plaintiff to

rely on a misrepresentation when it has sufficient information to the contrary.  <u>Putter v. N. Shore Univ. Hosp.</u>, 7 N.Y.3d at 553.

Here, CPD was aware of CFI's potential liability the day CPD assumed ownership of the Mobil station.  Indeed, in CPD and GES's January 13, 2011, agreement, CPD instructed GES to determine whether CFI was responsible for the contamination on plaintiff's property.  CPD's opposition even concedes, "there was information in existence at the time it purchased the CPD Site indicating CFI's potential culpability."  (Opp. Br. at 3).  Therefore, even if CFI misrepresented anything to CPD through GES, equitable estoppel is nevertheless unavailable.

Accordingly, CPD's Navigation Law claims are dismissed as untimely.

B.    <u>Unjust Enrichment Claim</u>

CFI moves to dismiss CPD's claim for unjust enrichment.

CPD claims CFI had a duty to clean up the spills on plaintiff's and CPD's properties, but failed to do so.  As a result, CPD, not CFI, incurred the costs of remediating its own property and plaintiff's.  CPD contends CFI was unjustly enriched as a result.

An unjust enrichment claim lies when "the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff."  <u>Corsello v. Verizon N.Y., Inc.</u>, 18 N.Y.3d 777, 790 (2012) (internal quotation marks omitted).  Unjust enrichment, however, "is not a catchall cause of action to be used when others fail."  <u>Id</u>.  The claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  <u>Id</u>.  Rather, unjust enrichment arises only in "unusual situations," typically when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  <u>Id</u>.

This case does not present the "unusual" circumstances needed to state an unjust enrichment claim.  Instead, this claim simply duplicates the property damage and reimbursement

aspects of the two Navigation Law claims.  Moreover, CPD's allegation in support of this claim,

that CFI "failed and refused to perform its duties and obligations as required by applicable law,"

(FATPC ¶ 182), undermines any claim CFI is "guilty of no wrongdoing."  Corsello v. Verizon

N.Y., Inc., 18 N.Y.3d at 790.

Therefore, CPD's unjust enrichment claim against CFI is dismissed.

C.     Declaratory Judgment Claim

CPD's declaratory judgment claim seeks a Court order "directing CFI to fully perform

and complete [all the] clean-up, removal and remediation of all discharge of petroleum products

from the CFI site."

This claim is duplicative of the Navigation Law claims.  See N.Y. Nav. L. § 181(1)

(providing for strict liability claims against a discharger of petroleum "for all cleanup and

removal costs and all direct and indirect damages" caused by the spill).  Claims for declaratory

judgment should be dismissed where they merely duplicate other claims.[6]  U.S. Bank Nat'l

Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co., 2014 WL 998358, at *8 (S.D.N.Y.

Mar. 14, 2014).

Therefore, the declaratory judgment claim is dismissed.

---

[6]     As explained above, the Navigation Law claims have been dismissed as time-barred.
However, even if the dismissal of these claims rendered the declaratory judgment claim non-
duplicative, it too would be time-barred.  Under New York law, claims for declaratory judgment
have whatever statute of limitations would be applicable to the "form of action or proceeding"
through which "the underlying dispute could have been resolved."  Save Pine Bush, Inc. v. City
of Albany, 70 N.Y.2d 193, 202 (1987).  Here, this claim for declaratory judgment could have
been resolved through a Navigation Law claim, so the same three-year statute of limitations
would apply.  CPD cannot reanimate a time-barred claim by styling it as a claim for declaratory
judgment.

D.      Trespass, Nuisance, and Negligence Claims

The applicable statute of limitations for trespass, nuisance, and negligence is three years from the time CPD knew or should have known of the petroleum spill on its own property.  See supra Part II.A.  For the reasons discussed above, see supra Part IV.A, these claims' limitations period began to run no later than January 13, 2011, so the limitations period expired on January 13, 2014, before CPD filed suit against CFI.

Therefore, these three claims are dismissed.

E.      Tortious Interference with Contract, Indemnification, and Contribution Claims

CFI moves to dismiss the remaining three claims—for tortious interference with contract, indemnification, and contribution—not because they fail to state a claim, but rather because the Court should, in its discretion, decline to exercise supplemental jurisdiction over these state law claims.  CFI argues this is so because these remaining claims "substantially predominate[] over" the one federal claim plaintiff asserts against EMOC and CPD, and the Court "has dismissed all claims" against CFI "over which it has original jurisdiction."  See 28 U.S.C. § 1367(c)(2), (3).

The Court has discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).  In exercising this discretion, the Court must balance "the traditional 'values of judicial economy, convenience, fairness, and comity.'"  See id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

On balance, judicial economy, convenience, fairness, and comity are best served by retaining jurisdiction over these three claims.  The claims are intertwined with the rest of this case—the tortious interference claim concerns CPD's contract with GES (both of which remain in the case) and what CFI and GES knew about CFI's responsibility for the petroleum

22

contamination of plaintiff's property, and the indemnification and contribution claims concern apportioning responsibility for the petroleum spill among all the parties.  Moreover, discovery is already underway.  Finally, dismissing these three claims would not dismiss CFI from the case, because EMC has asserted crossclaims against CFI.[7]

Therefore, the Court denies the motion to dismiss the tortious interference, indemnification, and contribution claims.

## CONCLUSION

CFI's motion to dismiss the SAC (Doc. #147) is GRANTED.

CFI's motion to dismiss the FATPC (Doc. #161) is DENIED as to Counts 15, 18, and 19, and GRANTED as to all other claims against it.

CPD's partial motion for judgment on the pleadings as to the SAC (Doc. #175) is GRANTED.  Accordingly, CPD's motion for partial summary judgment is moot.

The Clerk is directed to terminate the motions.  (Docs. ##147, 161, 175).

Dated:  March 28, 2016
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

---

[7]      EMC's crossclaims are subject to other pending motions to dismiss not addressed in this opinion.

23