UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

THE PLUMBING SUPPLY, LLC, d/b/a FAUCET WORKS,
Plaintiff,

v.

EXXONMOBIL OIL CORP., EXXON MOBIL CORP., CPD NY ENERGY CORP., CUMBERLAND FARMS, INC., and JOHN DOES 1-10,
Defendants.

--------------------------------------------------------------x

CPD NY ENERGY CORP.,
Third-Party Plaintiff,

v.

CUMBERLAND FARMS, INC., GROUNDWATER & ENVIRONMENTAL SERVICES, INC., and JOHN DOES 1-10,
Third-Party Defendants.

--------------------------------------------------------------x

**OPINION AND ORDER**

14 CV 3674 (VB)

Briccetti, J.:

By Opinion and Order dated March 28, 2016 (Doc. #268, hereafter "Plumbing Supply II"), the Court, inter alia, granted defendants CPD NY Energy Corp.'s ("CPD") motion for judgment on the pleadings (Doc. #175) and Cumberland Farms, Inc.'s ("CFI") motion to dismiss (Doc. #147) plaintiff's Second Amended Complaint ("SAC"). As a consequence, the Court dismissed plaintiff's claims against CPD and CFI under the New York Navigation Law and for common law negligence, trespass, and nuisance, on statute of limitations grounds.

Before the Court is plaintiff's motion for reconsideration of Plumbing Supply II under Local Civil Rule 6.3, or alternatively for leave to amend the SAC. (Doc. #275). The motion was filed on April 12, 2016, and the time for defendants to respond has not yet elapsed.

Nevertheless, at this time, the Court DENIES plaintiff's motion to reconsider the dismissal as to all claims except one, for which the Court will accept opposition briefing as set forth below, and DENIES plaintiff's motion to amend.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367(a).

## BACKGROUND

Familiarity with Plumbing Supply II and the factual background contained therein is presumed.

Between the time CPD's and CFI's motions were fully briefed and the Court's decision in Plumbing Supply II, a private arbitration between CPD and third-party defendant Groundwater & Environmental Services, Inc., resulted in an arbitration award largely in favor of CPD. (Doc. #251-1). Plaintiff has now received the arbitrator's opinion, the arbitration hearing transcript, and the exhibits from the arbitration. (Pl.'s Br. at 4 n.1). These materials from the arbitration form the basis of some of plaintiff's arguments in the present motion.

## DISCUSSION

### I. Motion for Reconsideration

"To prevail on a motion for reconsideration, the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y.C. Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)). Such a motion should be granted only when the Court has overlooked facts or precedent that might have altered the conclusion reached in the earlier decision. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see SDNY Local Civil Rule 6.3. The

movant's burden is weighty to avoid "wasteful repetition of arguments already briefed, considered and decided." Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

The motion must be "narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." Range Rd. Music, Inc., v. Music Sales Corp., 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000). Further, the motion "may not advance new facts, issues, or arguments not previously presented to the court." Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995) (citing Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 768 F. Supp. 115, 116 (S.D.N.Y. 1991)). This limitation ensures finality and "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988) (quoting Lewis v. N.Y. Tel., 1986 WL 1441, at *1 (S.D.N.Y. Jun. 29, 1986)).

## II. Plaintiff's Arguments

Plaintiff contends the March 28, 2016, opinion erred in four ways: (i) the Court overlooked controlling law mandating the application of a six-year statute of limitations to plaintiff's Navigation Law claims; (ii) the Court failed to consider facts in the SAC giving rise to a fiduciary relationship between plaintiff and CPD for the purposes of equitable estoppel; (iii) the Court mistakenly applied the three-year statute of limitations under CPLR § 214-c(2) to plaintiff's common law claims for injunctive relief; and (iv) the Court overlooked facts indicating the longer statute of limitations under CPLR § 214-c(4) applies to plaintiff's claims for negligence, trespass, and nuisance.

The Court will discuss each of these arguments in turn.

A. Navigation Law

Plaintiff argues the Court overlooked controlling law mandating a six-year statute of limitations for plaintiff's claims under the Navigation Law to recover consultants' and attorneys' fees. Specifically, plaintiff argues these fees fall under "investigation costs" and are therefore "cleanup and removal costs" within the meaning of N.Y. Nav. L. § 172(5). (Pl.'s Br. at 6). Additionally, plaintiff contends its failure to allege it obtained the Department of Environmental Conservation's ("DEC") approval to incur these costs does not mean they were not "cleanup and removal costs." (Id. at 7). The Court's reading of the Navigation Law, according to plaintiff, does not comport with the statute's "legislative objective to ensure swift, effective cleanup of petroleum spills that threaten the environment, and the mandate for liberal construction of the statute to achieve its purpose." (Id. at 6). Accordingly, plaintiff argues, the Court should reconsider its dismissal of plaintiff's Navigation Law claims against CFI and CPD.

Plaintiff is incorrect.

The Court held plaintiff's consultant and attorneys' fees are "indirect damages," subject to a three-year limitations period, not "cleanup and removal costs" subject to a six-year period. Plumbing Supply II at 13-14. The Court did so for two reasons: (i) the lack of authority suggesting these fees qualify as "cleanup and removal costs" rather than "indirect damages," id. at 14, and (ii) the statutory definition of "cleanup and removal costs" as "all costs associated with the cleanup and removal of a discharge . . . incurred by . . . any person with the approval of the [DEC]." Id. at 12, 14 (quoting N.Y. Nav. L. § 172(5)). Plaintiff never alleged it obtained such approval.

The Court reaffirms its holding that the consultant and attorneys' fees plaintiff incurred are not "cleanup and removal costs" for the reasons stated in Plumbing Supply II.

Of the controlling authority plaintiff cites for the proposition that its attorneys' and consulting fees are "investigation costs" that qualify as "cleanup and removal costs," none mandate a different result. Although Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc. held that "costs incurred from investigation . . . of petroleum" are recoverable under the Navigation Law, it did not hold these costs are "cleanup and removal costs." See 596 F.3d 112, 137 (2d Cir. 2010). New York v. Neill concerned investigative costs incurred while "attempting to locate and remove a substantial quantity of missing fuel oil discharged on defendant's property," rather than the costs associated with bringing a lawsuit or getting a second opinion on remediation already being done, the work for which AKRF was hired here. 17 A.D.3d 802, 804 (3d Dep't 2005). 145 Kisco Ave. Corp. v. Dufner Enters., Inc. does not address investigative costs at all. 198 A.D.2d 482 (2d Dep't 1993). Plaintiff cites two other cases that apply a six-year statute of limitations to actions seeking to recoup cleanup and removal costs "and other related damages," but neither case indicates what these "related damages" are. See Union Turnpike Assocs., LLC v. Getty Realty Corp., 27 A.D.3d 725, 726-27 (2d Dep't 2006); Barclays Bank of N.Y. v. Tank Specialists, Inc., 236 A.D.2d 570, 571 (2d Dep't 1997).

To the extent plaintiff argues the Court's holding in Plumbing Supply II is inconsistent with In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig., that District Court case is not controlling authority over this Court. 2007 WL 1601491 (S.D.N.Y. June 4, 2007) ("In re MBTE").[1]

[1] Moreover, In re MBTE is not inconsistent with Plumbing Supply II. The Court in Plumbing Supply II cited In re MBTE for the proposition that "[c]osts incurred without approval from the DEC are [] not 'cleanup and removal costs.'" Plumbing Supply II at 13 (citing In re MBTE at *18). Although, as plaintiff notes, In re MBTE allows for the possibility that a plaintiff could meet this requirement without obtaining explicit DEC approval before incurring cleanup and removal costs, In re MBTE at *18 n.152, nothing in that case suggests a plaintiff can recast consulting fees, incurred years after the spill, as "cleanup and removal costs" without ever

Indeed, the statute's language supports the Court's holding that the consulting and attorneys' fees were not "cleanup and removal costs" because DEC approval was neither sought nor obtained. "Cleanup and removal costs" are defined as "all costs associated with the cleanup and removal of a discharge . . . incurred by . . . any person with the approval of the [DEC]." N.Y. Nav. L. § 172(5) (emphasis added). DEC approval is contemplated elsewhere in the statute as well: for example, in the section titled "Removal of Prohibited Discharges," the statute explicitly does not "preclude cleanup and removal by any person threatened by such discharges, who, as soon as is reasonably possible, coordinates and obtains approval for such actions with ongoing state or federal operations and appropriate state and federal authorities." N.Y. Nav. L. § 176(7)(a) (emphasis added).

To claim plausibly that plaintiff was entitled to recover "cleanup and removal costs" from any defendant in this case, plaintiff needed to plead that it actually incurred such costs. On the face of the SAC, plaintiff did not, because it did not plead that it sought the statutorily required DEC approval. Nor has plaintiff given any indication it could do so if granted leave to amend. Thus, it is clear these were not cleanup and removal costs within the meaning of the statute.

Plaintiff argues the legislative objective of the Navigation Law, "to ensure swift, effective cleanup of petroleum spills that threaten the environment," and "the mandate for liberal construction of the statute to achieve its purpose," requires the Court not to dismiss the Navigation Law claims. (Pl.'s Br. at 6). But plaintiff cites no controlling authority suggesting the Court's ruling in Plumbing Supply II contravenes this legislative objective. Indeed, the Court is not persuaded that allowing recovery for consulting and attorneys' fees incurred several years after the spill was discovered furthers the goal of swift and effective cleanup of petroleum spills.

---

having sought DEC approval. Notably, In re MBTE held plaintiffs could not recover without "show[ing] DEC approval for their remediation costs." Id.

Therefore, the Court will not reconsider its dismissal of the Navigation Law claims.

B. Equitable Estoppel

Plaintiff argues the Court should have evaluated plaintiff's assertion of equitable estoppel against CPD as though CPD were plaintiff's fiduciary.[2] Significantly, a fiduciary may be equitably estopped merely for "conceal[ing] facts which he was required to disclose" and need not have made "an actual misrepresentation." See Kaufman v. Cohen, 307 A.D.2d 113, 122 (1st Dep't 2003).

Plaintiff supports this argument with facts in the complaint it claims the Court overlooked, as well as a statement from the arbitration hearing, which together it contends are sufficient to establish a fiduciary relationship. Plaintiff argues its relationship with CPD, as described in the SAC, was "grounded . . . in a higher level of trust than those involved in an arm's length business transaction" because of (i) Exxon Mobil Corp.'s ("EMC") "acknowledgement of culpability for contamination at the Faucet Works Site," which "induced [p]laintiff to enter into the Site Access Agreement ('SAA') with EMC"; (ii) plaintiff's reasonable belief that EMC hired GES to "act for or to give advice for the benefit of" plaintiff; (iii) GES's decade-long remediation of the Faucet Works site; (iv) EMC's statement of responsibility to remediate spills onto plaintiff's property; and (v) CPD's assumption of EMC's remediation responsibilities after CPD purchased the Mobil station. (Pl.'s Br. at 13).

Plaintiff also cites a CPD representative's sworn testimony at the arbitration hearing. The representative testified CPD needed to have a specific remediation plan for the Faucet Works site

2 Plaintiff never argued CPD was its fiduciary in plaintiff's opposition to CPD's motion. Instead, plaintiff argued CPD had made actual misrepresentations to prevent plaintiff from filing suit, but the Court rejected this argument. Plumbing Supply II at 17-18.

"because we have a professional obligation to let people know exactly what we're doing on a property that we don't own." (Pl.'s Br. at 12 (quoting Transcript of Arbitration Hearing at 348)).

None of the facts plaintiff now cites is sufficient to establish a fiduciary relationship between plaintiff and CPD.

"A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." Faulkner v. Arista Records LLC, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) (quoting Cooper v. Sony Records Int'l, 2001 WL 1223492, at *5 (S.D.N.Y. Oct. 15, 2001)). However, "a conventional business relationship does not create a fiduciary relationship in the absence of additional factors." Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 289 (S.D.N.Y. 1995) (quoting Feigen v. Advance Capital Mgmt. Corp., 150 A.D. 2d 281, 285 (1st Dep't 1989)). "Generally, an arm's length business transaction . . . is not enough to give rise to a fiduciary relationship." Faulkner v. Arista Records LLC, 602 F. Supp. 2d at 482 (quoting Sony Music Entm't, Inc. v. Robison, 2002 WL 272406, at *3 (S.D.N.Y. Feb. 26, 2002)). Where parties "do not create their own relationship of higher trust," the Court must take care not to "transport [parties] to the higher realm of relationship and fashion the stricter duty for them." Northeast Gen. Corp. v. Wellington Advert., Inc., 82 N.Y.2d 158, 162 (1993).

Despite plaintiff's arguments to the contrary, neither the SAC nor the quote from the arbitration hearing establishes a fiduciary relationship between CPD and plaintiff. Plaintiff pleads no facts suggesting the terms of the SAA involved the assumption of any fiduciary duties by any party. Nor was the CPD agent's remark about CPD's "professional obligation" to the owners of sites under remediation an admission that CPD had undertaken special fiduciary duties

to plaintiff. At bottom, CPD's relationship to plaintiff, as described in the SAC, was a conventional business relationship: CPD promised to remediate the spill, plaintiff relied on that promise, and, allegedly, CPD has yet to perform. Plaintiff's reliance on CPD's promise sounds in contract law, not the "repose" of trust contemplated by the law of fiduciary relationships.

Therefore, the Court will not reconsider its holding that CPD is not equitably estopped from asserting a statute of limitations defense.

C. Injunctive Relief

Plaintiff argues the Court should not have applied the three-year statute of limitations under CPLR § 214-c(2) to its claims for negligence, trespass, or nuisance because these claims also sought injunctive relief, while Section 214-c(2) applies only to damages. (Pl.'s Br. at 14).

Plaintiff never made this argument in its opposition to the motions, which counsels against the Court considering it now. However, the Court may reconsider its ruling to prevent "manifest injustice." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d at 701.

Both the negligence claim and the trespass claim explicitly seek only damages. (SAC ¶¶ 262, 272). The Court declines to read them to seek injunctive relief as well.

However, upon further review, the nuisance claim (Count Six) does seek injunctive relief. (SAC ¶ 278 ("Defendants are liable, jointly and severally, to abate the nuisance at the Faucet Works Site")).

Plaintiff directs the Court to Bano v. Union Carbide Corp., which held "the timeliness of a claim for injunctive relief is not governed by" Section 214-c(2), and allowed claims for injunctive relief to abate the seepage of a toxic foreign substance to go forward as a result." 361 F.3d 696, 709-10 (2d Cir. 2004) (citing Jensen v. Gen. Elec. Co., 82 N.Y.2d 77, 89-90 (1993)). This is indeed controlling authority over the Court.

After CPD and CFI have had an opportunity to oppose this motion and plaintiff an opportunity to reply, the Court will decide whether to reconsider dismissing the nuisance claims.

D. CPLR § 214-c(4)

Plaintiff contends the statute of limitations in CPLR § 214-c(4), that is, five years from the discovery of the injury plus one year from the discovery of the cause of the injury, applies to the negligence, trespass, and nuisance claims against CFI.

The Court has already considered and rejected this argument, because "[s]ection 214-c(4) only applies if plaintiff can allege the relevant scientific or technical community lacked the knowledge and information to determine the cause of plaintiff's injury." Plumbing Supply II at 12 (citing Wetherill v. Eli Lilly & Co., 89 N.Y.2d 506, 515 (1997)).

Plaintiff now argues the Court overlooked facts from the arbitration award that would change this result. Specifically, plaintiff contends the Court should have considered the arbitrator's finding, that "the technical knowledge and information to ascertain CFI as a cause of [p]laintiff's injury was withheld by GES to protect GES's business relationship with CFI." (Pl.'s Br. at 16). Plaintiff claims it would be manifestly unjust not to apply this statute of limitations to allow plaintiff to recover against both CPD and CFI. (Id.).

Plaintiff is incorrect.

The arbitrator's finding, even if the Court considered it, would not make CPLR 214-c(4) applicable. Nothing in the arbitrator's decision shows that, in January 2009—the latest possible date plaintiff discovered the injury—the relevant scientific or technical community did not know gas stations could cause petroleum spills. Regardless of whether GES withheld technical knowledge or information, plaintiff's own subjective lack of scientific or technical knowledge does not matter for this analysis. Plumbing Supply II at 12. Nor is it "manifestly unjust" for the

Court to apply a statute of limitations correctly, rather than contort it to allow a claim it plainly bars.

Therefore, the Court will not reconsider its holding that CPLR 214-c(4) does not apply.

III. Motion for Leave to Amend

Alternatively, plaintiff moves for leave to amend the SAC to incorporate facts contained in the arbitration award and its transcript and exhibits.

Rule 15(a)(2) provides that a party may amend its complaint only with the opposing party's consent or leave of court. While leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive . . . or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Plaintiff's motion to amend would be futile. As explained above, nothing plaintiff has identified in the arbitration award, transcript, or exhibits would save any of plaintiff's claims from dismissal.

Therefore, the Court will not grant plaintiff's motion for leave to amend.

**CONCLUSION**

The Court reserves ruling on plaintiff's motion to reconsider dismissal of Count Six until the motion is fully submitted as to that claim. By April 29, 2016, CPD and CFI may each submit an opposition brief, not to exceed ten pages, concerning only the dismissal of the nuisance claims. Plaintiff's reply, not to exceed five pages, is due May 6, 2016.

Plaintiff's motion for reconsideration is DENIED in all other respects.

Plaintiff's motion for leave to amend is DENIED.

The Clerk is directed to terminate the motion. (Doc. #275).

Dated: April 20, 2016
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge