UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
THE PLUMBING SUPPLY, LLC, d/b/a FAUCET      :
WORKS,                                                                       :
                              Plaintiff,                          :
v.                                                                               :
                                                                                 :
EXXONMOBIL OIL CORP., EXXON                   :
MOBIL CORP., CPD NY ENERGY                        :
CORP., CUMBERLAND FARMS, INC.,                 :
and JOHN DOES 1-10,                                       :
                              Defendants.                     :
--------------------------------------------------------------x      **OPINION AND ORDER**
CPD NY ENERGY CORP.,                                   :
                              Third-Party Plaintiff,        :      14 CV 3674 (VB)
v.                                                                               :
                                                                                 :
CUMBERLAND FARMS, INC.,                            :
GROUNDWATER & ENVIRONMENTAL        :
SERVICES, INC., and JOHN DOES 1-10,          :
                              Third-Party Defendants.    :
--------------------------------------------------------------x
CUMBERLAND FARMS, INC.,                            :
                              Third-Party Plaintiff,        :
v.                                                                               :
                                                                                 :
CONOCOPHILLIPS COMPANY                          :
                              Third-Party Defendant.       :
--------------------------------------------------------------x

Briccetti, J.:

         Plaintiff's plumbing supply store sits between two gas stations – a Mobil station and a

Gulf station.  One or both stations has spilled petroleum that has migrated onto plaintiff's

property, contaminating the air, soil, and groundwater.  Plaintiff seeks to hold liable the past and

present owners of one or both of the stations for remediating the contamination.

         This opinion addresses claims in the Second Amended Third Party Complaint

("SATPC") (Doc. #327) by third-party plaintiff CPD NY Energy Corp. ("CPD"), the current

owner of the Mobil station, against Groundwater & Environmental Services, Inc. ("GES"), the

environmental consulting firm CPD hired to remediate the contamination on plaintiff's property.[1]

In the SATPC, CPD alleges GES (i) failed effectively to remediate the contamination; (ii) concealed evidence suggesting the contamination on plaintiff's property originated from the Gulf station, not the Mobil station; and (iii) failed to pursue Cumberland Farms, Inc. ("CFI"), the owner of the Gulf station site, as the party responsible for the contamination.  As a result, GES allegedly tricked CPD into hiring it to perform remediation efforts that should have been CFI's responsibility.  CPD brings causes of action against GES for breach of contract (Counts Two and Three), fraud (Count Eleven), malpractice (Count Twelve), and indemnification and contribution (Counts Thirteen and Fourteen).[2]

GES filed a demand for arbitration (Barone Decl. Ex. E), in response to which CPD filed counterclaims for breach of contract (Counterclaims One and Two), breach of the duty of care (Counterclaim Three), and contribution and indemnification (Counterclaim Four).  (Barone Decl. Ex. F).  After an arbitration hearing, the arbitrator issued an award in favor of CPD.  (Barone Decl. Ex. H).

---

[1]     The present motions were made before CPD filed the SATPC.  At that time, the First Amended Third Party Complaint ("FATPC") was operative.  However, the SATPC does not amend any of the claims or factual allegations against GES contained in the FATPC.  Therefore, this opinion treats the present motions as pertaining to the SATPC.

[2]     CPD concedes in its opposition to GES's motion to dismiss that its claims for breach of the duty of good faith and fair dealing (Count Seven) and for performance of work in an unworkmanlike manner (Count Eight) are subsumed under the breach of contract claim, and should be dismissed as independent claims.  (Doc. #307).  CPD further concedes all other claims against GES in the SATPC (Counts Five, Six, and Nine) should be dismissed on their merits.  (Id.).  Therefore, Counts Five, Six, Seven, Eight, and Nine are dismissed.

CPD moves to confirm the arbitration award and for summary judgment as to GES's liability for breach of contract and indemnification, based on the result of the arbitration award. (Doc. #308).  GES moves to dismiss all claims against it in the SATPC.  (Doc. #281).

For the reasons discussed below, CPD's motion is GRANTED, and GES's motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).[3]

## BACKGROUND

I.      Allegations in the SATPC

Since 2006, plaintiff has owned and operated a plumbing supply store called Faucet Works and the site on which it is located, at 395 White Plains Road in Eastchester, New York.

CFI has owned and operated the Gulf station immediately south of the Faucet Works site since September 10, 2003.[4]  Exxon Company, U.S.A. ("Exxon Co."), which is not a named party, allegedly owned and operated the Gulf station from 1955 until March 1, 2000.[5]

CPD has owned and operated the Mobil station immediately north of the Faucet Works site since January 13, 2011.  Before that, ExxonMobil Oil Corporation ("EMOC") owned the Mobil station.

Plaintiff's property has long been affected by spilled petroleum, which migrated onto plaintiff's property and contaminated the air, soil, and groundwater.  There have been several

---

[3]      The Court has supplemental jurisdiction over the state law claims discussed herein because they arise from the same nucleus of operative fact as plaintiff's claim under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972 ("RCRA").

[4]      CFI claims to have sold the Gulf station recently, after the events described herein.  This is irrelevant to the present motions.

[5]      Plaintiff's Second Amended Complaint identifies defendant Exxon Mobil Corp. ("EMC") as the former owner of the Gulf station.

petroleum spills at the Mobil station over the past two decades, and until recently (indeed, after this case was filed), plaintiff, EMOC, and CPD assumed the Mobil station, not the Gulf station, was the source of the contamination.  As a result, EMOC, and later CPD, took responsibility for remediating plaintiff's property.  EMOC hired GES to remediate, which GES began in 2007. After CPD bought the Mobil station, GES continued to remediate on CPD's behalf.

CPD now claims the contamination came from CFI's Gulf station, not CPD's Mobil station.  Indeed, there were seven reported petroleum spills on the Gulf station site between 1986 and 2001.  Moreover, according to the SATPC, "[f]rom a groundwater flow perspective, the Faucet Works Property is down-gradient of the [Gulf station] and up-gradient of the [Mobil station]," (SATPC ¶ 8), suggesting the spilled petroleum flowed from the Gulf station onto plaintiff's property.

A.      GES's Alleged Knowledge of the Contamination Source

CPD claims GES has known the true source of the contamination for years, but never shared this information with CPD before or after CPD hired GES.

First, CPD claims Exxon Co. hired GES "as early as 1999" to remediate spills at the Gulf station.  (SATPC ¶ 45).  According to CPD, doing this work would have put GES on notice that petroleum was flowing from the Gulf station toward the Faucet Works site.  This is because (i) a previous consultant had modeled the flow of groundwater from the Gulf station onto the Faucet Works site; and (ii) GES detected and documented petroleum contamination along the boundary between the Gulf station and Faucet Works site in 2002 and 2008.  In particular, GES had installed a monitoring well, known as FMW-4, five feet from the Faucet Works building near the boundary between the Gulf station property and plaintiff's property.  In 2008, readings from the

4

FMW-4 well showed higher levels of petroleum contamination than did those from monitoring wells on the boundary between plaintiff's property and the Mobil station.

CPD also claims GES has put its knowledge about the Gulf station in writing.  First, in a letter to Nicholas Ward-Willis, Esq., dated December 20, 2004, GES concluded the contamination at the Faucet Works site came from the Gulf station, not the Mobil station.  Then, in a report to the New York State Department of Environmental Conservation (the "DEC") dated May 14, 2008, GES stated the contamination may have originated at the Gulf station site.

On September 8, 2009, EMOC allegedly sent a letter to CFI and GES indicating CFI was responsible for "ongoing impacts to the Faucet Works Property."  (SATPC ¶ 90).  GES did not tell the DEC about this letter.

According to the SATPC, GES never told CPD the Gulf station was the source of plaintiff's contamination, or shared with CPD any of the evidence showing this.  Also, GES allegedly never finished investigating whether the contamination came from the Gulf station.

After CPD purchased the Mobil station, GES's reports to the DEC did not opine that the contamination on plaintiff's property may have come from the Gulf station.  GES also failed to replace monitoring well FMW-4 after it stopped giving readings in September 2012.

B.     GES's Work for CPD

CPD purchased the Mobil station and several other sites from EMOC as part of a Sale and Purchase Agreement ("SPA"), on July 29, 2010.  The SPA required EMOC to set aside in an escrow account a portion of the purchase price, to pay for continued remediation efforts at the sites it sold to CPD (the "Remediation Fund").  CPD used this fund to remediate the Faucet Works site and other sites.  EMOC selected GES to perform all remediation covered under the SPA.

Under the terms of the SPA,[6] CPD is obligated to indemnify EMOC for:

> [A]ll Claims, liability, losses, expenses and costs incurred by [EMOC] in connection with, resulting from, related to, arising out of, or attributable in any way to any Claim based on, arising out of or related to: . . . [CPD's] performance of remediation, Remediation Activities, Engineering and Institutional Controls, or due diligence activities, including any and all third-party Claims relating to, arising out of, or incurred in connection with Remediation Consultants, [GES], or other Persons in the performance of remediation, Remediation Activities, Engineering and Institutional Controls or [CPD's] due diligence activities.

(Barone Decl. Ex. A at 41). Pursuant to this provision, CPD has been indemnifying EMOC in this litigation.

CPD alleges that, at the same time EMOC and CPD reached the SPA, EMOC and GES agreed upon a scope of work for the Faucet Works site without CPD's knowledge. This scope of work noted the Gulf station was the "likely" origin of some of the contamination and that it would be important to seek to transfer liability to CFI. (SATPC ¶ 102).

On January 13, 2011, CPD and GES executed the Fixed Price Remediation Agreement ("FPA"), which governs GES's remediation of a number of sites owned by CPD. The FPA requires GES to achieve No Further Action ("NFA") Status on each property, that is, to remediate the properties "to the applicable government clean-up standards," such that no further cleanup is legally necessary. (SATPC ¶¶ 98, 105). Under the terms of the FPA, CPD allots a particular sum of money from the Remediation Fund to each site for its remediation. GES is allowed to keep 50% of any unused money allotted for the site after remediation is complete, and the other 50% may be redistributed to pay for remediation at other sites.

---

[6]     For the purposes of GES's motion to dismiss, the Court considers two documents integral to the SATPC in addition to the pleadings: the SPA between CPD and EMOC, and the Fixed Price Remediation Agreement between CPD and GES.

6

The Mobil station and Faucet Works sites are covered under the FPA.  Accordingly, CPD and GES developed a scope of work – distinct from the scope of work CPD claims EMOC developed with GES – for the remediation of these sites.  The scope of work states that "impacts to the Faucet Works Property were possibly a result of contamination impacts at the [Gulf station]."  (SATPC ¶ 68).  Importantly, the scope of work required GES to "pursue CFI to assume the Faucet Works liability."  (Id. ¶ 69).

After the FPA was executed, CPD claims a GES employee performed a technical analysis of the Faucet Works site and confirmed the contamination came from the Gulf station.  (SATPC ¶ 116).  However, GES never told CPD its finding that "the [Gulf station] [w]as the source (or the potential source) of contamination at the Faucet Works Property."  (Id. ¶ 72).

Instead, CPD claims, GES focused solely on monitoring and remediating plaintiff's property as though the Mobil station was the only source of contamination.  Allegedly, GES has failed to remediate the Faucet Works and Mobil station sites to NFA status.

C.    GES's Relationship with CFI

CPD alleges that, after it and GES executed the FPA, GES entered into a contract with CFI to provide consulting services for "a large portfolio of sites."  (SATPC ¶ 117).  CPD claims GES told CFI the contamination at the Faucet Works site may have come from CFI's Gulf station, and that CFI told GES not to investigate this possibility further.  CPD also claims GES's decision not to pursue CFI as the party responsible for the contamination on the Faucet Works site was motivated in part by GES's desire to preserve its business relationship with CFI.

GES allegedly never told CPD about its agreement with CFI.

D.    CPD's Alleged Damages

In Counts Two and Three (for breach of contract), as well as Counts Eleven (fraud) and Twelve (professional malpractice), CPD seeks to recover from GES "the amount equal to that awarded to [plaintiff] under its action against CPD and [EMOC], if any."  (SATPC ¶ 161; see id. ¶¶ 166, 221, 227).  In other words, CPD seeks indemnification from GES for plaintiff's remaining claims.  Currently, plaintiff's remaining claims against CPD are for injunctive relief under both RCRA and a common-law nuisance theory.

Counts Two, Three, Eleven, and Twelve seek damages in addition to indemnification.  In Count Two, CPD seeks to recover "those damages to CPD for the failure to properly remediate the CPD Site."  (SATPC ¶ 161).  Counts Three and Twelve seek to recover other damages CPD has suffered, but do not specify what these are.  Count Eleven seeks to recover damages, under the theory that, had GES not defrauded CPD, it "may not have purchased the CPD site, [] may have renegotiated the [SPA] with [EMOC,] may have pursued available remedies including without limitation, a default of the FPA and/or [] would have provided proper notice to the []DEC of the conditions at the Faucet Works Property."  (Id. ¶ 220).

CPD alleges it paid GES through the Remediation Fund set aside from EMOC's purchase price.  Although elsewhere in the SATPC, CPD claims it "incurred costs to investigate and remediate the petroleum discharge at the Faucet Works Property upon the mistaken belief that the discharge originated from the [Mobil station]" (SATPC ¶ 23), it does not specify whether these costs were from the Remediation Fund or were separately paid out of pocket.

Finally, Counts Thirteen (Indemnification and Contribution) and Fourteen (Indemnification) allege GES is liable for indemnification and contribution for any judgment

plaintiff recovers against CPD or EMOC resulting from GES's "acts, omissions, negligence, wrongdoing and/or culpable conduct."  (SATPC ¶ 229).

II.   Arbitration Award

On December 31, 2014, CPD served a notice of default upon GES, alleging GES had breached the FPA as it pertained to the Faucet Works and Mobil station sites.

In response, GES filed a demand for arbitration on January 21, 2015, pursuant to the FPA's dispute resolution provisions.  The demand for arbitration asserted GES was not in default and had not breached the FPA.  Arbitration proceedings commenced.

On March 24, 2015, CPD filed an answering statement with four counterclaims: two for breach of contract, one for breach of the duty of care, and one for contribution and indemnification.

An arbitration hearing was held before Neil M. Gingold, Esq., on July 16, July 17, and August 26, 2015.  The arbitrator issued an award, including findings of fact and conclusions of law, on December 29, 2015.  The award reads as follows:

1. As to [GES's] assertion that it is not in default, I find for [CPD], and declare that [GES] is indeed in default.

2. As to [CPD's] four Counterclaims, as explained in my Findings, I find that [GES] has breached the terms of the [FPA] as set forth in each Counterclaim section of this Arbitrator's Findings, and I find that liability exists on the part of [GES] under each Counterclaim.

3. In light of the fact that neither side discussed damages in any manner whatsoever, this arbitrator has no ability of awarding damages to [CPD] as a result thereof.  As such, the awarding of damages, and the establishment of any amounts for indemnification, will have to await another court's review and decision.

(Barone Decl. Ex. H at 11).  The arbitrator also fully adopted CPD's proposed conclusions of law.  (Id. at 10).

For the breach of contract counterclaims, the Arbitrator indicated GES acted negligently under the FPA and had failed to complete its scope of work on the Mobil station and Faucet Works sites, both because it had not achieved NFA status for either site and because it had not gotten CFI to assume liability for the Faucet Works site.  (Barone Decl. Ex. H at 6-7).

For the breach of duty of care claim, the arbitrator reasoned GES breached its duty of care under the FPA by (i) incorrectly reporting the contamination at the Faucet Works site to the DEC under the same spill number associated with the Mobil station; and (ii) entering into a conflict of interest by contracting with CFI after entering into the FPA.  (Barone Decl. Ex. H at 8-10).

For the contribution and indemnification claim, the arbitrator found the indemnification provision at paragraph 10 of the FPA to be applicable and enforceable against GES.  (See Barone Decl. Ex. H at 10).  Under the FPA, at paragraph 10, GES is obligated to "indemnify, hold harmless, and defend [CPD] . . . from and against any liabilities, losses, claims, orders, damages, fines and penalties . . . arising out of, related to, resulting from or associated with" the following:

> a.  any acts, omissions, negligence, or misconduct of a party or its officers, agents, employees, or subcontractors in performing any and all work authorized under this Agreement including, but not limited to any acts, omissions, negligence, or misconduct of a party or its officers, agents, employees, or subcontractors in the performance of this FPA;
>
> b.  a breach by [GES] of the terms of this FPA; . . .
>
> d.  Any violation by a party of the Environmental Law or Environmental Laws; and
>
> e.  Bodily injury and/or property damage to the extent caused by the acts, omissions, negligence or misconduct of a party or its officers, agents, employees, or subcontractors.

(Barone Decl. Ex. B at 8).

10

Additionally, in CPD's proposed conclusions of law, which the arbitrator adopted, it states:

> Based upon the default by GES, GES is required to reimburse CPD for all damages and all potential liability related to the Faucet Works Property and [Mobil station], including without limitation, liability and indemnification to as well as defense costs stemming from claims by [plaintiff], [EMOC], and CFI. CPD is entitled to indemnification and an offset from GES for any damages including costs associated with investigating and pursuing CFI as a potentially responsible party.

(Barone Decl. Ex. G ¶ 33).

CPD and GES dispute the meaning of one passage in the arbitration award, concerning whether the remediation efforts at the Mobil station and Faucet Works sites addressed "Covered Contamination" within the meaning of the FPA. "Covered Contamination" means contamination that "(a) was disclosed in the Baseline Report; (b) existed prior to the Closing Date; (c) was caused by, resulted from or arose from [EMOC's] operations prior to the Closing Date; and (d) is required to be remediated to industrial/commercial standards by a Governmental Authority pursuant to Environmental Laws existing and enforceable on the Closing Date." (Barone Decl. Ex. B at 2). GES is only responsible for performing the scope of work for sites on which there is Covered Contamination.

In the passage at issue, the arbitrator writes:

> I am taking the position that no one has demonstrated by factual submission that the current conditions at the [Faucet Works] site and the [Mobil station] are "Covered Contamination," as defined within the FPA. From what was presented over three days of testimony by both sides, from what limited information was presented as to the Baseline Report . . . no one presented any information of any kind that I am aware of that the physical conditions at the two sites were not in existence, on-site or under the site as the case may be, prior to July 29, 2010. [EMOC], as the Seller owned those two sites until they were sold to [plaintiff] in or about 2006, and sold to [CPD] in 2010. Lastly, both sites are in fact required by the DEC to be remediated to acceptable levels as per the DEC.

> [] I am proceeding under the premise that these sites are "Covered
> Contamination."

(Barone Decl. Ex. H at 4-5).  GES contends this passage means the arbitrator did not decide

whether the contamination on the Mobil station and Faucet Works sites was "Covered

Contamination," while CPD contends the first sentence contains a typographical error, and the

passage means the arbitrator did decide both sites contained Covered Contamination.

GES has not moved to vacate, modify, or correct the arbitration award.

III.   CPD's Motion for Summary Judgment

The parties submitted briefs, statements of facts pursuant to Local Civil Rule 56.1,[7]

affidavits, and declarations with exhibits reflecting the factual background as described above.

## DISCUSSION

I.   CPD's Motion

CPD's motion requests an order granting the following relief:

1. Confirmation of the arbitration award, pursuant to 9 U.S.C. § 9 of the Federal Arbitration
   Act ("FAA");

2. Summary judgment in favor of CPD as to liability based on the arbitration award, on
   Counts Two and Three (breach of contract), as well as Counts Thirteen and Fourteen
   (indemnification and contribution);

3. Summary judgment in favor of CPD as to liability on Counts Thirteen and Fourteen
   based on paragraph 10 of the FPA;

4. "Finding that GES must indemnify CPD for (a) all claims for damages set forth in
   [plaintiff's] pleadings, (b) provide defense costs to CPD stemming from claims by
   [plaintiff] and CFI, and (c) reimburse CPD for all counsel fees and costs associated with
   indemnifying [EMOC] in the present litigation" (CPD's Br. at 19);

5. "Granting CPD the opportunity to submit documentation establishing the amount of
   damages due from GES to CPD for defense costs to be determined by the Court" (Id.);

---

[7]      GES did not submit a counterstatement pursuant to Local Civil Rule 56.1(b).  Thus, the
Court deems the facts in CPD's Rule 56.1 Statement to be undisputed.  Local Civil Rule 56.1(c).

6. "Granting CPD the opportunity to submit documentation establishing the amount of damages due from GES to CPD for reimbursement of remediation costs due to improper performance of the Scope of Work under the FPA which amount must be restored to the [Remediation Fund]" (Id. at 19-20); and

7. "Granting CPD a declaratory judgment authorizing reimbursement of any future costs, liabilities or damages due from GES under the indemnification and defense requirements set forth at ¶ 10 of the FPA" (Id. at 20).

The Court discusses each requested form of relief below.

    A.     <u>Confirmation of the Arbitration Award</u>

The parties do not dispute the FAA applies to the present dispute.[8]  The FAA provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

Here, the FPA's dispute resolution section provides that "[a]ny [arbitration] award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in a court of competent jurisdiction." (Barone Decl. Ex. B at 10). CPD moved for confirmation on May 4, 2016, less than one year after the December 29, 2015, arbitration award, so the motion is timely. The parties do not dispute this Court has jurisdiction to confirm the award. The award has not been vacated, modified, or corrected.

Therefore, the Court must grant CPD's application for an order confirming the award.

GES argues the arbitration award should not be confirmed because CPD moved for summary judgment, not confirmation of the arbitration award. This argument is unavailing

---

[8]     Indeed, GES previously moved to compel arbitration, citing the applicability of the FAA. (Doc. # 165).

because the first sentence in CPD's moving brief indicates it is seeking confirmation, and the motion "relies on the validity of the arbitration award" to establish the absence of material issues of fact.[9]  Andrea Doreen, Ltd. v. Bldg. Material Local Union 282, 250 F. Supp. 2d 107, 111 (E.D.N.Y. 2003).  There need not be a separate motion to confirm the award.  See id.

Accordingly, the arbitration award issued on December 29, 2015, is confirmed.

> **B.**     **Summary Judgment on Liability Based on the Arbitration Award**

> > **1.**     **Legal Standard**

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[9]     In addition, Point I of CPD's moving brief explicitly demands that the arbitration award be confirmed.

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

   2.  CPD Entitled to Summary Judgment Based on the Arbitration Award

Based on the findings in the arbitration award, which the Court must accept, summary judgment is warranted as to liability on Counts Two, Three, Thirteen, and Fourteen.

As an initial matter, the Court rejects GES's argument that CPD's motion is premature.

GES argues its time to oppose CPD's motion "has not yet begun to run, and cannot begin until the Court determines whether the [SATPC] should be dismissed as to GES."  (GES's Opp. Br. at 7).  GES cites the advisory committee's note for Rule 56 for the proposition that "[i]f a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due."  Fed. R. Civ. P. 56 advisory committee's note.

However, the advisory committee's note also states, "[t]he presumptive timing rules are default provisions that may be altered by an order in the case or by local rule.  Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines."  Indeed, in this case, after discussing the matter with counsel, the Court superseded the rules by setting a briefing schedule for the present motions in its Order dated March 30, 2016.  (Doc. #269).

Therefore, CPD's motion is not premature.

a.    Counts Two and Three

CPD seeks summary judgment on two different contract claims: Count Two alleges GES breached the FPA by failing properly to remediate the contamination on the Mobil station and Faucet Works sites, and Count Three alleges GES breached the FPA by failing to investigate and hold CFI responsible for the contamination on the Faucet Works property.

In finding GES liable on CPD's first and second counterclaims for breach of contract, the arbitrator concluded GES was liable for breaching the FPA by, among other things, failing in its responsibility properly to remediate the Mobil station and Faucet Works sites, and failing to pursue CFI to assume liability.  This is a sufficient factual basis for the Court to conclude, as a

matter of law, there is no genuine issue of material fact as to the theories of contract liability articulated in Counts Two and Three.

GES argues there are genuine issues of material fact because the arbitrator specifically declined to rule on (i) whether the contamination at the Mobil station and Faucet Works sites was "Covered Contamination" under the FPA; and (ii) whether GES was negligent by misfeasance.

The Court disagrees.

First, the arbitrator did, in fact, decide the contamination at the Mobil station and Faucet Works sites was "Covered Contamination."

GES claims that, because it has no obligation under the FPA to remediate contamination that is not "Covered Contamination" to NFA status, and because the arbitrator did not decide whether the contamination at issue qualifies as "Covered Contamination," the arbitrator did not actually resolve the issue of whether GES breached the FPA by failing to remediate the contamination.  GES's argument focuses on the sentence, "I am taking the position that no one has demonstrated by factual submission that the current conditions at the [Faucet Works] site and the [Mobil station] are 'Covered Contamination.'" (Barone Decl. Ex. H at 4).

However, the several sentences immediately following the one GES cites show the arbitrator did decide that the contamination qualifies as "Covered Contamination."  Specifically, the arbitrator analyzed the conditions at the two sites under the four prongs of the FPA's definition of "Covered Contamination" – disclosure in the Baseline Report, existence prior to the Closing Date, whether the conditions arose from EMOC's operations, and the DEC's requirement that the sites be remediated – and concluded, "I am proceeding under the premise that these sites are 'Covered Contamination.'"  (Barone Decl. Ex. H at 4-5).  In context, the

sentence GES cites contains a typographical error – it omits the word "not" between the words "are" and "Covered."

Second, GES argues the arbitrator left open the issue of whether GES was negligent by misfeasance.  But the arbitration award later states, "I find [GES] was negligent in its handling of the contract, and failed to meet the requirements imposed upon it under the FPA thus breaching the contract."  (Barone Decl. Ex. H at 7).  This is sufficient to show there is no genuine issue of material fact as to liability on the breach of contract claims in Counts Two and Three.

Therefore, summary judgment is warranted as to liability on Counts Two and Three.[10]

### b.   Counts Thirteen and Fourteen

Summary judgment is also warranted as to liability on the indemnification and contribution claims.

The arbitrator's award, particularly insofar as it adopts paragraph 33 of CPD's proposed conclusions of law, sweeps broadly, covering "all potential liability related to the Faucet Works Property and [Mobil station], including without limitation, liability and indemnification to as well as defense costs stemming from claims by [plaintiff], [EMOC], and CFI."  (Barone Decl. Ex. G at 30).  Because the parties agreed that judgment would be entered upon the award, and because GES did not move to vacate, modify, or correct the award, the Court must enforce it. See 9 U.S.C. § 9.

GES argues summary judgment is not warranted because the SATPC does not plead

---

[10]     Contrary to GES's contentions in the Affidavit of Alison K. L. Moyer in Opposition to CPD's Cross-Motion for Summary Judgment ("Moyer Aff."), because the arbitrator's findings are conclusive, no additional discovery is needed to determine whether the contamination at issue was "Covered Contamination" or whether GES was negligent as described in the arbitrator's ruling.  Given the fact that GES has not moved to modify or vacate the arbitration award, the Court treats the arbitrator's rulings on these issues as determinative.

indemnification or contribution based on paragraph 10 of the FPA or any other contractual provision.

The Court disagrees.

Count Thirteen pleads CPD is entitled to indemnification, contribution, or an offset in damages "based upon common law, statute or law, <u>contract</u> <u>or</u> <u>otherwise</u>." (SATPC ¶ 231 (emphasis added)). Therefore, the indemnification and contribution claims encompass contractual indemnification.

C.      Summary Judgment Based on Paragraph 10 of the FPA

CPD also seeks summary judgment as to liability on Counts Thirteen and Fourteen based on paragraph 10 of the FPA. This point is now moot. Because summary judgment as to Counts Thirteen and Fourteen is warranted based on the arbitrator's award, the Court need not determine whether summary judgment is warranted based on the FPA itself.

D.      Indemnification for Plaintiff's Claims and Defense Costs

CPD seeks an order "[f]inding that GES must indemnify CPD for (a) all claims for damages set forth in [plaintiff's] pleadings, (b) provide defense costs to CPD stemming from claims by [plaintiff] and CFI, and (c) reimburse CPD for all counsel fees and costs associated with indemnifying [EMOC] in the present litigation." (CPD's Br. at 19).

The Court will issue an appropriate order consistent with the arbitration award.[11] By October 25, 2016, pursuant to Local Civil Rule 77.1, CPD shall submit a proposed order to set forth and enforce GES's indemnification obligations.

E.      CPD's Proposed Submissions Regarding Damages

---

[11]      The Court notes that the arbitrator made no determination as to any indemnification amounts or damages generally.

CPD makes three further requests regarding damages:

1. "[T]he opportunity to submit documentation establishing the amount of damages due from GES to CPD for defense costs to be determined by the Court";

2. "[T]he opportunity to submit documentation establishing the amount of damages due from GES to CPD for reimbursement of remediation costs due to improper performance of the Scope of Work under the FPA which amount must be restored to the [Remediation Fund]"; and

3. "[A] declaratory judgment authorizing reimbursement of any future costs, liabilities or damages due from GES under the indemnification and defense requirements set forth at ¶ 10 of the FPA."

(CPD's Br. at 19-20).

To the extent CPD seeks to recover such damages, because the arbitrator reached no conclusions as to damages, and because discovery as to the extent of damages is incomplete, this request is denied without prejudice.  It would be unfair to force GES to defend such a motion while discovery into the extent of such damages is ongoing.  After discovery is complete, CPD and GES shall proceed to the damages phase of the arbitration.

II.     GES's Motion to Dismiss

   A.     Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded allegations in the SATPC and draws all reasonable inferences in CPD's favor. In addition to the pleadings, the Court considers two documents integral to the complaint: the FPA between CPD and GES, and the SPA between CPD and EMOC.

B.      Breach of Contract Claims (Counts Two and Three)

The Court granted CPD's motion for summary judgment as to liability on the breach of contract claims in Counts Two and Three based on the arbitration award. See supra Part I.B. GES's motion to dismiss these claims is now moot, except that the arbitration award specifically deferred ruling on damages.[12]

Therefore, GES's motion to dismiss CPD's breach of contract claims is denied. After the close of discovery, CPD and GES shall proceed to the damages phase before the arbitrator, and

---

[12]      To state a claim for breach of contract under New York law, which the parties agree applies, a complaint must allege damages. See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Counts Two and Three of the SATPC allege damages. (SATPC ¶¶ 161, 166).

to the extent CPD is unable to establish it was damaged by GES's breaches of the FPA, CPD

may renew its motion to dismiss the breach of contract claims before the arbitrator.

      C.    <u>Fraud (Count Eleven)</u>

      GES contends CPD's fraud claim should be dismissed because CPD has not met the

heightened pleading standard of Rule 9(b).

      The Court agrees, but grants CPD's motion for leave to amend this claim.

      Fraud claims are subject to the heightened pleading requirements set forth in Fed. R. Civ.

P. 9(b).  Rule 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally."  When the fraud claim is based on omissions

rather than statements, plaintiff must allege "(1) what the omissions were; (2) the person

responsible for the failure to disclose; (3) the context of the omissions and the manner in which

they misled the plaintiff, and (4) what defendant obtained through the fraud."  <u>Odyssey Re</u>

<u>(London) Ltd. v. Stirling Cooke Brown Holdings Ltd.</u>, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000),

<u>aff'd</u> 2 F. App'x 109 (2d Cir. 2001) (summary order).

      CPD arguably identifies "what the omissions were" (GES's alleged knowledge of the

source of contamination), "the context of the omissions and the manner in which they misled"

CPD (negotiations over the FPA and scope of work), and "what defendant obtained through the

fraud," the inducement of the FPA and scope of work.  <u>See Odyssey Re (London) Ltd. v. Stirling</u>

<u>Cooke Brown Holdings Ltd.</u>, 85 F. Supp. 2d at 293.  But CPD does not identify "the person

responsible for the failure to disclose."  <u>Id</u>.

      CPD contends GES itself was the speaker by alluding to reports GES issued to the DEC

that contained allegedly false information.  CPD's argument is unpersuasive: it has not identified

how GES's reports to the DEC – i.e. the reports' authors or how the reports reflect GES's intent to defraud CPD – could substantiate its fraud claim.  Therefore, CPD has not pleaded this claim with sufficient particularity and dismissal of Count Eleven is warranted.

However, CPD has moved in the alternative for leave to amend to plead its fraud claim with the requisite particularity, noting "additional facts regarding the fraudulent activities of GES have been and are continuing to be disclosed in the course of discovery."  (Doc. #307 at 11).

Because the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a), and because, under the circumstances, amendment here would neither be futile nor unduly prejudicial, CPD's application for leave to amend is granted.

D.     Professional Malpractice (Count Twelve)

GES argues CPD does not state a claim against GES for professional malpractice because, among other reasons, CPD has not pleaded that GES's alleged actions proximately caused GES any damages beyond those stemming from its contract damages.

The Court agrees, but grants CPD leave to amend this claim.

"Under New York law, professional malpractice is a species of negligence.  As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages."  Hydro Inv'rs, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 15 (2d Cir. 2000) (internal quotation marks and alterations omitted).  "An action for professional malpractice may lie in the context of a contractual relationship if the professional negligently discharged the duties arising from that relationship," but only if "a legal duty independent of the contract has been violated."  17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am., 259 A.D.2d 75, 82-83 (1st Dep't 1999).  Moreover, "a contracting party seeking only a benefit of the bargain recovery, [that is], economic

loss under the contract, may not sue in tort notwithstanding the use of familiar tort language in its pleadings." Id. at 83.

CPD alleges GES took the following actions in violation of its professional standard of care:

- GES failed to determine properly that the groundwater flowed from the Gulf station toward and across the Faucet Works site;

- GES "improperly implied that the source of contamination at the Faucet Works site came from the [Gulf station]" in its reports to the DEC;

- GES failed to disclose to the DEC that the contamination of plaintiff's property came from the Gulf station, and falsely told the DEC the Mobil station was the source;

- GES failed to disclose to the DEC or CPD its knowledge "regarding petroleum contamination migrating from the [Gulf station] to the [Faucet Works] property";

- GES failed to fully investigate and assess the Faucet Works site due to its "cost minimization approach";

- GES "entered into a[] services agreement with CFI whose goals and objectives with respect to the remediation of the Faucet Works [s]ite were adverse to those of CPD, an existing client."

(SATPC ¶ 225).

Like Count Three, the main thrust of Count Twelve is that GES failed to hold CFI responsible for the contamination, and thus CPD is responsible for remediating a condition it did not cause. But Count Twelve does not allege any damages, let alone damages arising from a duty GES owes to CPD independently from the FPA. In its opposition papers, CPD argues it "suffered injuries beyond those explicitly contemplated under the contract," without explaining what those injuries are. (CPD Opp. at 13).[13] CPD's conclusory assertion it was separately

---

[13] To the extent CPD alleges GES committed professional malpractice by failing properly to remediate the Mobil station and Faucet Works sites, as required by the FPA, this is duplicative of Count Two. See Sommer v. Fed. Signal Corp., 79 N.Y.2d 540 (1992) ("[W]here plaintiff is

damaged by GES's malpractice, raised for the first time in its opposition, is speculative and unsupported by the SATPC's allegations.

Therefore, dismissal of Count Twelve is warranted.[14]  However, given that the Court has granted CPD leave to amend its fraud claim, CPD may attempt to cure the pleading deficiencies in its malpractice claim – including by articulating how GES's alleged malpractice proximately caused CPD injury – when CPD files a Third Amended Third Party Complaint.

      E.     <u>Indemnification and Contribution (Counts Thirteen and Fourteen)</u>

GES's sole argument to dismiss Counts Thirteen and Fourteen is that RCRA does not allow for claims of indemnification and contribution.  Without deciding whether GES's contention about RCRA is true, the Court rejects this argument.

At the time this motion was filed, plaintiff's only remaining claim against CPD was under RCRA.  (Doc. #268).  Since then, however, the Court granted plaintiff's motion to reconsider the dismissal of plaintiff's common-law nuisance claim for injunctive relief.  (Doc. #326).  This leaves open the possibility CPD could be held liable for nuisance, and would need to seek indemnification or contribution from GES for its alleged role in failing properly to remediate the Faucet Works site.

Therefore, dismissal of Counts Thirteen and Fourteen is not warranted.[15]

---

essentially seeking enforcement of the bargain, the action should proceed under a contract theory.").

[14]     Because CPD has failed to allege how its damages stemming from GES's alleged professional malpractice are distinct from its damages for GES's breach of the FPA, the Court need not address GES's additional arguments with respect to CPD's malpractice claim.

[15]     In the alternative, GES urges the Court not to exercise supplemental jurisdiction over any of CPD's claims – all of which arise from state law – that survive the present motion to dismiss. For substantially the reasons set forth in the Court's previous ruling on motions to dismiss (Doc. #268 at 22-23), the Court will not decline to exercise supplemental jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c).

**CONCLUSION**

CPD's motion to confirm the arbitration award in its favor is GRANTED.

CPD's motion for summary judgment is GRANTED as to liability on Counts Two, Three, Thirteen, and Fourteen of the SATPC. After the close of discovery, CPD and GES shall proceed to the damages phase of the arbitration on these claims.

GES's motion to dismiss is DENIED as to Counts Two, Three, Thirteen, and Fourteen, and GRANTED as to Counts Eleven and Twelve of the SATPC. CPD is granted leave to amend Counts Eleven and Twelve.

GES's motion to dismiss is GRANTED as to Counts Five, Six, Seven, Eight, and Nine of the SATPC.

By October 25, 2016, pursuant to Local Civil Rule 77.1, CPD shall submit a proposed order to set forth and enforce GES's indemnification obligations. Prior to doing so, CPD shall attempt to obtain GES's consent to the form of the proposed order.

By October 25, 2016, CPD shall file its Third Amended Third Party Complaint with respect to Counts Eleven and Twelve only, or inform the Court by letter that it no longer intends to pursue these claims.

The Clerk is directed to terminate the motions. (Docs. ##281, 308).

Dated:  October 4, 2016
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

26