```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
THE PLUMBING SUPPLY, LLC, d/b/a            :
FAUCET WORKS,                              :
                 Plaintiff,                :
v.                                         :
                                           :
EXXONMOBIL OIL CORP., EXXON                :
MOBIL CORP., CPD NY ENERGY                 :
CORP., CUMBERLAND FARMS, INC.,             :
and JOHN DOES 1-10,                        :
                 Defendants.               :
--------------------------------------------------------------x    OPINION AND ORDER
CPD NY ENERGY CORP.,                       :
                 Third-Party Plaintiff,    :    14 CV 3674 (VB)
v.                                         :
                                           :
CUMBERLAND FARMS, INC.,                    :
GROUNDWATER & ENVIRONMENTAL                :
SERVICES, INC., and JOHN DOES 1-10,        :
                 Third-Party Defendants.   :
--------------------------------------------------------------x
CUMBERLAND FARMS, INC.,                    :
                 Third-Party Plaintiff,    :
v.                                         :
                                           :
CONOCOPHILLIPS COMPANY                     :
                 Third-Party Defendant.    :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff's plumbing supply store sits between two gas stations—a Mobil station and a Gulf station. One or both stations has spilled petroleum that has migrated onto plaintiff's property, contaminating the air, soil, and groundwater. Plaintiff seeks to hold liable the past and present owners of one or both stations in an effort to remediate the contamination.

This opinion addresses two motions concerning claims and counterclaims between third-party plaintiff CPD NY Energy Corp. ("CPD"), the Mobil station's current owner, and Groundwater & Environmental Services, Inc. ("GES"), the environmental consulting firm CPD

1

hired to remediate the contamination on plaintiff's property. GES moves (Doc. #370) to dismiss CPD's fraud claim, the eleventh cause of action in CPD's Third Amended Third Party Complaint ("TATPC") (Doc. #363). CPD moves (Doc. #391) to dismiss GES's counterclaims and to strike the third, sixth, eleventh, and twelfth affirmative defenses in GES's Amended Answer to the TATPC ("answer" or "Ans.") (Doc. #387).

For the reasons discussed below, GES's motion is DENIED, and CPD's motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).[1]

## BACKGROUND

I. Allegations in the TATPC

Since 2006, plaintiff has owned and operated a plumbing supply store called Faucet Works and the site on which it is located, at 395 White Plains Road in Eastchester, New York.

Cumberland Farms, Inc. ("CFI"), owned and operated the Gulf station immediately south of Faucet Works from September 2003 until selling it after the events described in the TATPC took place.

CPD has owned and operated the Mobil station immediately north of Faucet Works since January 2011. ExxonMobil Oil Corporation ("EMOC") owned the Mobil station previously.

Before plaintiff purchased Faucet Works, petroleum migrated onto the property, contaminating the air, soil, and groundwater. For years, plaintiff, EMOC, and CPD assumed the contamination was from a particular spill at the Mobil station, documented with the New York State Department of Environmental Conservation ("DEC") as administrative Spill No. 89-13000.

---

[1] The Court has supplemental jurisdiction over the state law claims discussed herein because they arise from the same nucleus of operative fact as does plaintiff's claim under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972.

As a result, EMOC, and later CPD, tried to remediate plaintiff's property. EMOC hired GES to remediate beginning in 2007. After CPD bought the Mobil station, CPD and GES entered into a contract, the Fixed Price Remediation Agreement (the "Agreement"), under which GES agreed to remediate Faucet Works and several other CPD-owned sites. The Agreement also obligated GES to pursue CFI to take responsibility for the Faucet Works contamination.

Now, however, CPD alleges the contamination came from the Gulf station on the other side of the property, and that GES knew this long before the parties entered into the Agreement. CPD claims GES has done remediation work at the Gulf station site since 1999, knows that groundwater flows from the Gulf station toward Faucet Works, and discovered contamination on the boundary between the Gulf station and Faucet Works in 2002 and 2008. CPD also claims GES wrote a letter in 2004 indicating the contamination at Faucet Works came from the Gulf station, and another letter in 2008 indicating it may have come from there. Then, in 2009, EMOC wrote to CFI and GES indicating CFI was responsible for the ongoing contamination at Faucet Works. Also in 2009, EMOC and GES jointly drafted "Planning Assumptions" for the Mobil station that indicated "impacts to the sump at the Faucet Works property . . . likely originate from the Gulf Station." (TATPC ¶ 190).

CPD also claims, after CPD and GES executed the Agreement, the GES project manager assigned to the Faucet Works project analyzed the site and concluded the Gulf station caused the contamination. The project manager drafted a letter to the DEC attributing the Faucet Works contamination to the Gulf station, but GES management allegedly told him not to submit it.

The TATPC also alleges GES intentionally withheld its knowledge about the contamination's true source and misled CPD to believe it came solely from the Mobil station. When CPD and GES were negotiating the Agreement in November 2010, GES's Senior Project

3

Manager and its Junior Geologist provided CPD with a "Phase 1" written report stating "GES installed a carbon filtration system and AS system on the [F]aucet [W]orks property to treat sump water in association with [DEC] Spill # 89-13000" and there was "no 'evidence of surface or subsurface (soil &/or GW) contamination'" at the Gulf station site. (TATPC ¶ 194). During negotiations, GES's vice president allegedly withheld GES's knowledge about the contamination's source.

From April 2012 through the end of 2015, the GES project manager submitted reports to CPD "reporting the contamination of the Faucet Works Property under spill number 89-13000 associated with contamination from the [Mobil station]." (TATPC ¶ 204). These reports did not indicate contamination was coming from the Gulf station. The project manager and another GES employee also submitted invoices to CPD that "implicitly and explicitly assured CPD that the work being performed to mitigate contamination at the Faucet Works Property was associated with spill number 89-13000." (Id. ¶ 205). CPD paid these invoices, relying on GES's assurances that the contamination came from a spill at the Mobil station.

CPD claims GES was motivated to mislead CPD for two different reasons: to keep costs down, and to curry favor with CFI. First, under the Agreement, if funds allotted to the remediation of a particular site are left over after remediation is complete, GES keeps 50% of the leftover funds. CPD contends GES chose to remediate Faucet Works as though the Mobil station was the sole source of contamination because it was less costly to do so. Second, in 2012, after CPD and GES executed the Agreement, GES entered into a contract with CFI worth significantly more money than its contract with CPD. CPD claims when GES told CFI the contamination at Faucet Works may have come from the Gulf station, CFI told GES to stop investigating this possibility. GES never disclosed to CPD its relationship with CFI.

But for GES's misrepresentations and omissions about the contamination's source, CPD claims it "(a) may not have purchased the [Mobil station], (b) may have renegotiated the Purchase Agreement with [EMOC], (c) would not have authorized payments under the [Agreement] as demanded by GES, (d) may have pursued available remedies against or a resolution with GES well before any action was pursued by the Plaintiff Faucet Works and/or (e) would have provided proper notice to the [DEC] of the conditions at the Faucet Works Property so as to prompt [DEC] to include CFI as a Responsible Party." (TATPC ¶ 212).

II.   GES's Affirmative Defenses and Counterclaims

GES asserts three counterclaims based on CPD's alleged breaches of the Agreement.

First, GES claims CPD breached its obligation under Section 5(c) of the Agreement to "provide reasonable access for GES and its subcontractors[] to the properties and [to] enter into any other access agreements with other third party property owners, as necessary to complete the performance of the scopes of work." (Ans. ¶ 237). GES contends it needed access to CFI's property to perform the scope of work because the Gulf station caused the contamination. CPD allegedly did not enter into an agreement to procure this access.

Second, GES claims CPD breached Sections 8 and 16(b) of the Agreement. The Agreement provides for GES to remediate "covered contamination," which, by definition, "arose from [EMOC's] operations prior to the closing date." (Ans. ¶ 249). If GES and CPD discover contamination that is not "covered," Section 8 requires them to negotiate in good faith to set prices and determine what remediation is necessary, and Section 16(b) requires CPD to name an independent consultant and engage in technical dispute resolution with GES. GES alleges the Faucet Works contamination is not covered contamination because it came from the Gulf station

and thus was not caused by EMOC's prior operations. Yet, CPD allegedly has not negotiated in good faith or named an independent consultant, and has refused technical dispute resolution.

The third counterclaim alleges CPD "breached the [Agreement] with GES in this matter" but does not specify how. (Ans. ¶ 279). GES also claims CPD's unspecified actions are the sole proximate cause of any damages to plaintiff and CPD.

All three counterclaims assert "GES hereby denies any negligence, carelessness, fault, breach of contract, statutory violations, or other culpable conduct on its part with respect to the occurrence described in the complaints and the third-party complaints, including the [TATPC]." (Ans. ¶¶ 246, 276, 281). Moreover, all three counterclaims allege CPD's breaches of the Agreement caused the damages to plaintiff and CPD, either in whole or in part. GES claims it is entitled to indemnification and/or contribution from CPD against any judgment plaintiff recovers from GES in this action "to the extent of [GES's] relative responsibilities for the damages caused and the judgment obtained." (Id. ¶¶ 248, 278, 283). GES pleads no other damages.

GES's answer also raises fourteen affirmative defenses, of which CPD moves to strike the third, sixth, eleventh, and twelfth. The third affirmative defense states:

> The recovery of the plaintiff and/or the third-party plaintiff, if any, should be barred or reduced in the proportion that their culpable conduct, including contributory negligence or assumption of risk, bears to the total culpable conduct found to have caused plaintiff's and/or third-party plaintiff's damages.

(Ans. ¶ 223). The sixth affirmative defense asserts the Court lacks subject matter jurisdiction. The eleventh affirmative defense asserts GES owed no duty to plaintiff or CPD, or if GES did owe a duty to either, it did not breach that duty. The twelfth affirmative defense asserts GES's actions and omissions did not proximately cause harm to plaintiff or CPD.

III.   Procedural History

The Court previously adjudicated liability for most of the claims between CPD and GES in its opinion and order dated October 4, 2016. (Doc. #358, "Oct. 4 Op.").

In the October 4 opinion, the Court addressed the effect on this case of an arbitration proceeding between GES and CPD regarding the events described herein. The arbitration award, issued on December 29, 2015, found in CPD's favor on all of its claims. Specifically, the arbitrator found GES breached the Agreement by (i) failing to remediate properly the Mobil station and Faucet Works sites; (ii) failing to make CFI assume liability for the contamination at Faucet Works; (iii) incorrectly reporting the Faucet Works contamination to the DEC under Spill # 89-13000; and (iv) creating a conflict of interest by contracting with CFI. In reaching his ruling, the arbitrator concluded the contamination at Faucet Works was "covered contamination" as defined in the Agreement. (Oct. 4 Op. at 17-18). The arbitrator also found Section 10 of the Agreement required GES to indemnify CPD. In adopting CPD's proposed conclusions of law, the arbitrator ruled,

> Based upon the default by GES, GES is required to reimburse CPD for all damages and all potential liability related to the Faucet Works Property and [Mobil station], including without limitation, liability and indemnification to as well as defense costs stemming from claims by [plaintiff], [EMOC], and CFI. CPD is entitled to indemnification and an offset from GES for any damages including costs associated with investigating and pursuing CFI as a potentially responsible party.

(Id. at 11 (internal quotation omitted)). The arbitrator explicitly did not adjudicate damages.

In the October 4 opinion, the Court confirmed the arbitration award and, based on the award, granted summary judgment in CPD's favor as to liability on its contract, indemnification, and contribution claims against GES. The Court dismissed all of CPD's other claims against

7

GES but granted CPD leave to replead its fraud and professional malpractice claims. CPD elected to replead only its fraud claim.

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Id</u>. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

Counterclaims are subject to the same pleading standards as are complaints. <u>Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.</u>, 138 F. Supp. 3d 303, 313 (S.D.N.Y. 2014).

II. <u>GES's Motion to Dismiss CPD's Fraud Claim</u>

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff

8

reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)). An omission is fraudulent "only if the non-disclosing party has a duty to disclose." Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995). A duty to disclose arises if, among other things, "one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party." Id. (internal quotation marks omitted).

Fraud claims are subject to the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud or mistake." Although Rule 9(b) states "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," id., in the Second Circuit, a plaintiff claiming fraud must nevertheless "allege facts that give rise to a strong inference of fraudulent intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994), superseded by statute on other grounds, as stated in In re Paracelsus Corp. Sec. Litig., 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998). A plaintiff may do so "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

For fraudulent statements, the plaintiff must allege "(1) the specific statement . . . ; (2) the aspect of the statement . . . that makes it false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (citation omitted), aff'd 2 F. App'x 109 (2d Cir. 2001) (summary order). For fraudulent omissions, plaintiff must allege "(1) what the omissions were; (2) the person

9

responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Id.

CPD has met these pleading requirements, and thus states a claim for fraud.

First, CPD pleads GES's alleged misrepresentations with particularity. According to the TATPC, in November 2010, during negotiations of the Agreement, GES's Senior Project Manager and its Junior Geologist provided CPD with the "Phase 1" report containing two misrepresentations. This report attributed the contamination at Faucet Works to the Mobil site when it stated GES's work at Faucet Works was "to treat sump water in association with [DEC] Spill # 89-13000." (TATPC ¶ 194). The report also stated there was no evidence of contamination at the Gulf station site. Later, from April 2012 through 2015, the GES project manager sent CPD status reports and invoices explicitly attributing the remediation work to Spill # 89-13000.

CPD also pleads GES's alleged misleading omissions with particularity. According to the TATPC, while negotiating the Agreement, GES's vice president never disclosed what GES knew about the Gulf station's role in contaminating Faucet Works,[2] even though GES's Phase 1 report indicated the Gulf station played no role. While reporting on GES's remediation efforts, GES's project manager never told CPD the Gulf station caused the contamination, even though the status reports and invoices solely attributed the contamination to the Mobil station. As a result, CPD has pleaded a duty to disclose this knowledge because GES made "partial or ambiguous statement[s] that require[d] additional disclosure to avoid misleading" CPD. See

---

[2] GES argues this contention "is frivolous" because it is "belied by information contained in CPD's own documents." (Moyer Aff., Doc. 371 ¶ 17). However, GES did not attach any documents to support this or specify which documents these were, and the Court must accept CPD's factual allegations as true at the pleading stage. Ashcroft v. Iqbal, 556 U.S. at 679.

Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d at 1483 (internal quotation marks omitted).

Second, CPD adequately pleads GES knew these statements and omissions were false and misleading. As discussed more fully above, CPD's allegations suggest that GES knew for years the Gulf station, not the Mobil station, caused the Faucet Works contamination.

Third, CPD pleads GES's motive and opportunity, which is sufficient to plead intent. See Shields v. Citytrust Bancorp, Inc., 25 F.3d at 1128. GES allegedly had a financial motive to induce CPD to enter into the Agreement: GES wanted CPD to pay it to remediate contamination at Faucet Works for which CPD may not have been responsible. After the Agreement was executed, GES allegedly had the additional motive of preserving its lucrative relationship with CFI by concealing the Gulf station's responsibility for the Faucet Works contamination. GES allegedly had the opportunity to commit fraud during negotiations and through its continual reports indicating the remediation at Faucet Works was to address contamination from the Mobil station.

Fourth, CPD pleads it reasonably relied on GES's assurances that the Mobil site caused the Faucet Works contamination when it entered into the Agreement to pay, and later continued paying, GES to remediate contamination at the site.

Fifth, CPD pleads it incurred costs it would not have incurred but for GES's alleged deception, including the remediation of contamination for which CPD was not responsible.

Accordingly, dismissal of CPD's fraud claim is not warranted.

III.    CPD's Motion to Dismiss GES's Counterclaims

All three of GES's counterclaims warrant dismissal based on res judicata, because they attempt to relitigate the extent of GES's obligation to indemnify CPD in this action.

Res judicata precludes parties from relitigating issues that were or could have been raised in a prior proceeding. See Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000). It applies when: (i) the prior proceeding involved an adjudication on the merits; (ii) the prior proceeding involved the same parties or those in privity with the parties; and (iii) the claims alleged in the subsequent action were, or should have been, raised in the prior proceeding. Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001). Whether a claim should have been raised in the prior proceeding "depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." Id. (internal quotation omitted). Arbitration qualifies as a prior proceeding. Id. at 90.

The only form of damages GES's counterclaims seek is indemnification and/or contribution from CPD against any judgment plaintiff recovers from GES. This is curious, because plaintiff asserts no claims against GES directly. (See Second Am. Compl., Doc. #158).

As a practical matter, however, GES's counterclaims actually seek to eliminate or lessen its responsibility to indemnify CPD for any judgment plaintiff ultimately obtains against CPD in this action. In each counterclaim, GES denies culpability for all plaintiff's and CPD's claims, attributes plaintiff's damages to CPD's alleged breaches of the Agreement, and asserts CPD should reimburse GES to the extent CPD caused these damages. Thus, it is evident GES seeks to reallocate to CPD some or all of its responsibility to indemnify CPD against plaintiff.

GES, however, is precluded from relitigating its indemnification obligation to CPD, because the arbitrator already decided this issue.

The first two elements of res judicata are met because the arbitration decided the merits of the dispute between the same two parties present here.

The third element—that GES's claims were or should have been raised in the arbitration—is also met. During the arbitration, GES argued in its closing brief that CPD should not prevail on its indemnification claim because CPD had not shown that only GES, and not CPD, was at fault for plaintiff's damages. (Barone Aff., Doc. #392, Ex. C at 36).[3] Yet, the arbitrator found in CPD's favor on its indemnification and contribution claims, and ruled "GES is required to reimburse CPD for <u>all</u> damages and <u>all</u> potential liability related to the Faucet Works Property and [Mobil station], including <u>without limitation</u>, liability and indemnification to as well as defense costs stemming from claims by [plaintiff], [EMOC], and CFI." (Oct. 4 Op. at 11 (emphasis added)). Thus, the arbitrator has already considered and rejected GES's contention that CPD's culpable conduct lessened or negated GES's obligation to indemnify CPD.

Moreover, to the extent the counterclaims here assert culpable conduct by CPD not presented to the arbitrator—such as CPD's alleged failure to procure access for GES to the Gulf station property or negotiate in good faith regarding a "new condition"—the Court sees no reason why GES should not have raised these arguments in the arbitration.[4]

Accordingly, GES's counterclaims are dismissed on <u>res judicata</u> grounds.

IV. <u>CPD's Motion to Strike GES's Affirmative Defenses</u>

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In order for a court to strike a defense as insufficient (1) there must be no question of fact that might allow the defense

---

[3] On a motion to dismiss for <u>res judicata</u>, the Court may consider "materials appropriate for judicial notice," <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 498 (2d Cir. 2014), including filings in arbitration proceedings, <u>Stephens v. Trump Org. LLC</u>, 205 F. Supp. 3d 305, 309 n.5 (E.D.N.Y. 2016); <u>Purjes v. Plausteiner</u>, 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016).

[4] The arbitration decision indicates GES did raise CPD's alleged failure to submit to technical dispute resolution and name an independent consultant to determine whether the Faucet Works contamination was a new condition. (Barone Aff. Ex. B at 4, 6).

to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010). "Increased time and expense of trial may constitute sufficient prejudice to warrant granting" a motion to strike affirmative defenses. Sec. & Exch. Comm'n v. Toomey, 866 F. Supp. 719, 722 (S.D.N.Y. 1992).

The Court will consider the applicability of these defenses to CPD's remaining claims against GES: breach of contract (Counts Two and Three); fraud (Count Eleven); and indemnification and contribution (Counts Thirteen and Fourteen). As to all but the fraud claim, the Court has already granted summary judgment in CPD's favor as to liability, but not damages.

CPD moves to strike the third affirmative defense, in essence a contributory and/or comparative negligence defense. Striking this defense is warranted as to the contract and fraud claims because contributory and/or comparative negligence is not a defense either to breach of contract or to fraud. See Solutia Inc. v. FMC Corp., 456 F. Supp. 2d 429, 451-52 (S.D.N.Y. 2006). Striking the defense is further warranted as to the indemnification and contribution claims because, as explained supra Part III, the extent of GES's indemnification obligation to CPD is subject to the doctrine of res judicata based on the arbitration award and the Court's October 4, 2016, opinion. To continue to litigate this issue would increase the time and expense of a potential trial, thus causing prejudice.

CPD moves to strike the sixth affirmative defense, lack of subject matter jurisdiction, because the Court has already decided it has supplemental jurisdiction over CPD's claims. However, the Court has "an independent obligation to evaluate" the existence of subject matter jurisdiction "even in the absence of a challenge from any party." Dean v. Blumenthal, 577 F.3d 60, 64 (2d Cir. 2009); accord Fed. R. Civ. P. 12(h)(3). Thus, the issue of subject matter

14

jurisdiction will remain in the case regardless of whether it remains pleaded in the answer. For this reason, CPD is not prejudiced by its inclusion, and striking this defense is not necessary.

CPD moves to strike the eleventh affirmative defense, which asserts GES neither owed plaintiff or CPD a duty, nor breached any duty it owed, and the twelfth affirmative defense, which asserts GES's actions did not proximately cause harm to plaintiff or CPD. Striking these defenses is warranted as to the contract, indemnification, and contribution claims because these defenses contest liability, rather than the extent of damages, and the Court has already granted summary judgment on liability in CPD's favor. Relitigating liability at trial after summary judgment has been granted would be a prejudicial waste of resources.

Striking the eleventh defense is also warranted as to the fraud claim because duty and breach are not elements of fraud. Supra Part II. This defense thus lacks a basis in law or fact.

However, striking the twelfth affirmative defense is not warranted as to the fraud claim because proximate causation is part of the damages element of fraud. Nealy v. United States Surgical Corp., 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008). Therefore, there are questions of law and fact that may allow this defense to succeed.

## CONCLUSION

GES's motion to dismiss is DENIED.

CPD's motion to dismiss GES's counterclaims is GRANTED.

CPD's motion to strike GES's affirmative defenses is GRANTED as to the third and eleventh defenses, and as to the twelfth defense except as it applies to CPD's fraud claim. CPD's motion to strike is DENIED as to the sixth defense and as to the twelfth defense insofar as it applies to the fraud claim.

The Clerk is directed to terminate the motions. (Docs. ##370, 391).

15

The next case management conference remains scheduled for October 5, 2017, at 10:00 a.m. By September 28, 2017, the parties shall submit a joint letter stating their positions as to how this case should proceed.

Dated: September 5, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge