UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x      14-CV-3674 (VLB)

THE PLUMBING SUPPLY, LLC, d/b/a            :
FAUCET WORKS,
                                           :         **ECF CASE**
            Plaintiff,
                                           :

    - against -
                                           :

EXXONMOBIL OIL CORPORATION,
EXXON MOBIL CORPORATION,                   :
CPD NY ENERGY CORPORATION,
CUMBERLAND FARMS, INC. and                 :
JOHN DOES 1-10,
                                           :
            Defendants.
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                           :
CPD NY ENERGY CORPORATION,
                                           :
            Defendant and Third-Party Plaintiff,
                                           :
    - against -
                                           :
CUMBERLAND FARMS, INC., GROUNDWATER
& ENVIRONMENTAL SERVICES, INC., and JOHN   :
DOES 1-10,
                                           :
            Third-Party Defendants.
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………...…....ii

    A.  Preliminary Note ……………………………………………………………………….1

    B.  Claims Under NL §190 are Essentially Contractual in Nature……………………………2

    C.  *Mandarino v. Travelers*, not *State v. King. Serv.,* Controls the Present Case…………….3

    D.  CPD Improperly Failed to Disclose the Existence of the Policy………………………….3

    E.  The Supposed "Endorsement 19" Has Little or No Evidentiary Value…………………..4

    F.  CPD's Failure to Comply with its Initial Disclosure Obligations
        Did Not Create in Plaintiff an Obligation to Inquire Further Regarding Insurance………5

    G.  Plaintiff's State Court Claims Have No Bearon the Present Motion……………..……..7

    H.  Plaintiff Has Not Unduly Delayed the Present Motion…………………………...…………8

    I.  The Court of Appeals's Decision in *Contact Chiropractic*
       Does not Control the Present Case…………………………………………………….…..9

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                              **PAGES**

*Affiliated FM Ins. Co. v. Liberty Mech. Contrs., Inc.,*

   2013 U.S. Distr. LEXIS 122030 (S.D.N.Y. 2013)……………………………………………………8

*Beckman v. United States Postal Serv.*,

   79 F.Supp. 2d 394, 408 (S.D.N.Y. 2000)……………………………………………………….8

*Calabro v. Stone*,

   224 F.R.D. 532 (E.D.N.Y. 2004)……………………………………………..………… 4

*Clarendon Place Corp. v. Landmark Ins. Co.*,

   182 A.D.2d 6 (1st Dep't 1992)……………………………….…………………………..2

*Contact Chiropractic, P.C. v. New York City Tr. Auth.*,

   31 N.Y.3d 187 (2018)………………………….……………………9, 11, 12

*Dacosta v. City of New York*,

   296 F. Supp. 569, 595 (E.D.N.Y. 2017)…………………………….……………………….7

*Enzymotic Ltd. V. NBTY, Inc.*,

   754 F.Supp. 2d 527, 536 (E.D.N.Y. 2010)……………………………....………………….8

*Excelsior Coll. v. Frye*,

   233 F.R.D. 583 (S.D.Cal. 2006)……………………………….……………….…….4

*Green v. Wolf Corp.*,

   50 F.R.D. 220, 223 (S.D.N.Y. 1970)…………………………………………………………9

*Kassner v. 2d Ave. Delicatessen, Inc.*,

   498 F.Supp. 229, 244 (2d Cir. 2007)…………………………………………………………8

*Lewis v. Nevada*, 2007 WL 455392

   (D.Nevada Dec. 17 2007)………………………………….……………….………4

*Mandarino v. Travelers Prop. Cas. Ins. Co.*,

   37 A.D. 3d 775 (2d Dep't 2007)……………………………………………………….7, 8

*Matter of ELRAC, Inc. v. Exum,*
  18 N.Y.3d 325 (2011)……………………………………………………….………….11, 12

*ELRAC, Inc. v. Ward*,
  96 NY2d 58, 77 (2001)……………………………..……………………………………….12

*Metalios v. Tower Ins. Co. of NY*,
  77 A.D.3d 471……………………………………………………………………….…………4

*Middle Atlantic Utilities Co. v. S.M.W. Development Affiliated FM*,
  392 F.2d 380 (2d Cir. 1968)……………………………………………………………....…8

*Neri v. Coughlin*,
  1993 U.S. Dist. LEXIS 15892 (S.D.N.Y. 1993)……………………………....……………….8

*Pagovich v. Moskowitz*,
  865 F.Supp. 130, 134 (S.D.N.Y. 1994) ………………………………………………...………8

*Parker v. Columbia Pictures Indus.*,
  240 F.3d 326, 339-40 (2d Cir. 2000…………………………………………………………….8

*State Farm Mut. Auto. Ins. Co. v. Regional Tr. Serv.,*
  79 A.D.2d 858 (4th Dep't 1980)……………………………………………………………….10

*State v. INA Underwriters Ins. Co.,*
  133 Misc. 2d 430 (N.Y. Sup. Albany Co. 1986)……………………………….……....3, 10, 11

*State v. King Serv.*,
  167 A.D.2d 777 (3d Dep't 1990)……………………………………………………3, 10, 11

*State v. Zurich Ins. Co.,*
  199 A.D.2d 916 (3d Dep't 1993). ...............................................................................................1

*Town of Wawarsing v. Camp, Dresser & McKee, Inc.*,
   49 A.D.3d 1100, 1101 (3d Dep't 2008)……………………………………….……………….8

**STATUTES** **PAGES**

CPLR § 213(2)……………………………………….……………………………………..1, 2, 3

CPLR § 214(2)……………………………………………………………………….…………3, 10

F.R.Civ.P. 15(a)……………………………………….…...…………....…………7, 8, 9

F.R.Civ.P. 16(b)…………………………………………………………………………………..8

F.R.Civ.P. 26(a)(1)(D)…………………………………….…...…………………………………6

Insurance Law § 3420……………………………………………………..…………….2, 10

Insurance Law § 5103…………………………………………...….…………………………..9

Navigation Law § 181…………………………………………………………………………….7

Navigation Law § 190……………………………………………………………………Throughout

Navigation Law § 195………………………………………………………………..………..2, 12

A.      Preliminary Note.

As Plaintiff argues below and in its Memorandum of Law in Support of Motion to Amend ("Memo in Support"), its claims against Illinois Union Insurance Company ("IU") under Navigation Law § 190 ("NL 190") arise by virtue of IU's status as an "insurer" of defendant CPD NY Energy Corp. ("CPD") under an environmental insurance policy IU issued to CPD on or about January 13, 2011 (the "Policy"). Should the court find that the Policy does not cover Plaintiff's claims, Plaintiff asserts that CPD is self-insured and therefore subject to a 6-year limitations period under CPLR 213(2) for the reasons argued below.

B.  Claims Under NL §190 are Essentially Contractual in Nature.

Navigation Law § 190 authorizes persons injured by petroleum discharges to bring claims for their damages "directly against . . . the insurer, or any other person providing evidence of financial responsibility." CPD argues paradoxically that an insurer's liability under NL 190 arises without any corresponding "duty to pay" under the applicable policy of insurance, and therefore Plaintiff's claim against CPD's insurer, Illinois Union Insurance Company ("IU"), cannot be for "non-payment" under the Policy. CPD Memorandum at 4. *State v. Zurich Ins. Co.*, 199 A.D.2d 916 (3d Dep't 1993), however, recognizes the NL 190 plaintiff's obligation to give timely notice under the applicable insurance policy. *Id.* at 917. Normally the purpose of requiring a notice of claim is to allow the insurer to determine whether the claim is covered, so that the insurer can choose to pay or litigate it. CPD's argument implies that such notice, though required under NL 190, has no real function, since a "duty to pay" can only arise from a judgment against IU following "a direct action" against IU by Plaintiff under NL 190.

Navigation Law § 190, says that "[a]ny claims"—not "any lawsuits"—may be "brought directly" against the insurer. The notice required under the Policy performs its usual function of

1

triggering a determination by the insurer whether the claim is covered.  To deny the claim, the insurer must assert that the claim is not covered <u>by the Policy</u>:  it must determine whether it is within the scope and period of the Policy's coverage, whether any exclusions apply, and whether any contractual defenses may be available to justify denying the claim.  If it denies (or ignores) the claim, NL 190 authorizes Plaintiff to sue to enforce its claim <u>under the Policy</u> just as CPD could have done when its claim against IU was denied.  If the insurer is held liable, any judgment against it will be subject to the Policy's liability limits.  In every meaningful respect Plaintiff's claim is controlled by the terms of the Policy, and its essence is therefore contractual for purposes of CPLR 213(2).

CPD's argument that Plaintiff is not in privity with IU because NL 190 is "in derogation of common law" is a red herring.  CPD Memo at 5, *citing Clarendon Place Corp. v. Landmark Ins. Co.*, 182 A.D.2d 6 (1st Dep't 1992).  In *Clarendon,* the First Department addressed Insurance Law § 3420, which permits plaintiffs who have obtained a judgment against an insured to sue the insurer directly to collect on the judgment.  The court held that because § 3420 was in derogation of common law it must be <u>strictly construed</u>; therefore, the court could not excuse the statutory requirement that plaintiffs obtain a judgment against the insured before suing the insurer.  *Id*. at 9.  The case has no relevance here, given that (a) Navigation Law § 195 instructs that the Navigation Law must be "<u>liberally construed</u> to effect its purposes" and (b) Plaintiff is not seeking to sidestep any procedural requirement of NL 190.

### C. *Mandarino v. Travelers*, not *State v. King. Serv.*, Controls the Present Case.

The decision in *State v. King Serv.*, 167 A.D.2d 777 (3d Dep't 1990), and its interplay with the Supreme Court's decision in *State v. INA Underwriters Ins. Co.,* 133 Misc. 2d 430 (N.Y. Sup. Albany Co. 1986), is discussed in Part II below. For purposes of CPD's assertion that *King Services* holds that the "essence" of a claim under NL 190 property damage, suffice to say here that there is no indication that the issue of the limitations period was briefed or argued in *King Services*; it appears that the court below had dismissed the relevant claim on different grounds. *Id*. at 778. The *King Services* court simply held in conclusory fashion, and without considering whether any other theories could apply, that the plaintiff's NL 190 claim was for damage to property.

Far more persuasive than the decision in *King Serv.* is the Second Department's decision in *Mandarino v. Travelers Prop. Cas. Ins. Co.*, 37 A.D. 3d 775 (2d Dep't 2007), holding that where a cause of action arises under a both a statute and a contract, the exception in CPLR 214(2) excluding contract cases from coverage of CPLR 214(2) applies. *Id*. at 775-76; *see* Memo in Support at 8. A NL 190 plaintiff's right to sue the insurer "directly," i.e., without first obtaining judgment against the insured, is granted by NL 190, but the nature and extent of the insurer's liability derives from and is determined by the terms of its contract with its insured: without that contract there would be no "insurer" to sue. The holding in *Mandarino* is squarely on point, and CPLR 213(2) applies to the exclusion of CPLR 214(2).

### D. CPD Improperly Failed to Disclose the Existence of the Policy.

CPD asserts that its failure to identify IU as an insurer in its initial disclosures was proper because (a) IU had denied CPD's claim and (b) CPD's counsel "reasonably concluded" that Plaintiff's claims were not covered by the Policy. CPD Memorandum at 8. It is a party's duty,

3

however, to disclose the existence of insurance that <u>may</u> provide coverage, regardless of the discloser's opinion that an exclusion applies.  Memo in Support at 10-11.  To avoid the Eastern District's clear holding to that effect in *Calabro v. Stone*, 224 F.R.D. 532 (E.D.N.Y. 2004), CPD sets up a spurious distinction between initial disclosures and answers to interrogatories, citing the inapposite cases of *Excelsior Coll. v. Frye*, 233 F.R.D. 583 (S.D.Cal. 2006) and *Lewis v. Nevada*, 2007 WL 455392 (D.Nevada Dec. 17 2007).  CPD Memo at 8-9.  In *Excelsior*, the Southern District of California merely held that initial disclosures need only provide the insurance policy, and not any releases, settlements, or amounts remaining available under the policy.  *Id* at 586.  According to CPD, *Lewis* holds that insurance need not be disclosed if a statute bars coverage:  no statute applies here to excuse disclosure of the Policy.  CPD Memo at 9.

    **E.   The Supposed "Endorsement 19" Has Little or No Evidentiary Value.**

    Next, CPD asserts that an endorsement to the Policy specifically excludes coverage associated with Spill No. 89-13000 at CPD's property, on which Plaintiff's claims are in part based.  To support this assertion, CPD offers an unsigned, undated document purporting to be that endorsement.  Barone Decl. Ex. B.  An unsigned endorsement is enforceable if it "was part of the policy when it was issued."  *Metalios v. Tower Ins. Co. of NY*, 77 A.D.3d 471.  The Policy was issued on January 13, 2011.  Barone Decl., Ex. C at 4 of 32.  According to CPD's counsel, the document labeled as Barone Decl. Exhibit B "is un-numbered but is Endorsement 19."  Barone Decl. Para. 27.  The document attached as Exhibit A to the Lindquist Reply Declaration, however, is numbered Endorsement No. 13, dated "04/20/2011", and signed by an Authorized Agent; it recites that "Endorsement #002 of this Policy is hereby deleted in its entirety and replaced with Endorsement#14."  Lindquist Decl. Ex. B.  Endorsement No. 14, attached to the Lindquist Reply Declaration as Exhibit B, appears to be a revised list of covered locations, still including CPD's

4

407 White Plains Road address, i.e., the location of Spill No. 89-13000. *Id.* It is reasonable to infer from these facts that Endorsement No. 19 was later in time than Endorsements 13 and 14, and therefore did not form a part of the Policy when it was issued.

Moreover, when denying coverage of Plaintiff's claim, UI's representative, ACE North American Claims, made no reference to any policy exclusion, and certainly not to any "Endorsement No. 19." Barone Decl. Ex. C at 12 of 32. ACE simply found: "Based on the information provided, it does not appear that a claim is at issue. Remediation has been ongoing at the site, and there is now a disagreement as to future remediation methods. This does not meet the Policy's definition of a claim." *Id.* Considering that the ACE denial letter is dated May 29 2014, a week <u>after</u> the complaint was filed in the present matter, it is curious that CPD made no effort to challenge a denial based entirely on the supposed unripeness of the claim. It is puzzling too—not to say troubling—that although the Plaintiff's and CPD's counsel had corresponded several times regarding the Policy (*see* Barone Decl. Exs. C, D and E), CPD did not inform Plaintiff of the supposed existence of "Endorsement 19" until <u>after</u> the present motion was filed. *See* Lindquist Reply Decl. Ex. D (e-mail from J. Barone to E. Lindquist dated October 4, 2018).[1]

In the circumstances described above, Plaintiff submits that the supposed "Endorsement No. 19" has little or no evidentiary value and urges the Court to disregard it. Alternatively, Plaintiff respectfully requests expedited discovery to determine whether "Endorsement No. 19" ever formed a part of the Policy effective to exclude coverage of Plaintiff's claim.

---

[1] Lindquist Decl. Exs. A - B are extracted from the document named "18 10 04 Redacted ACE Policy.pdf" that was sent as an attachment to Lindquist Decl. Ex. D. The entire Redacted Ace Policy is 82 pages long.

5

> **F.    CPD's Failure to Comply with its Initial Disclosure Obligations Did Not Create in Plaintiff an Obligation to Inquire Further Regarding Insurance.**

In an effort to reverse the applicable legal burden under F.R.Civ.P. 26(a)(1)(D), CPD argues that, because it informed Plaintiff's counsel that a different insurer had denied coverage of Plaintiff's claim under a different policy, Plaintiff was under a duty to challenge CPD's initial disclosures and pursue discovery regarding insurance. CPD Memo at 11. The other insurer, Tokio Marine Insurance Co., denied CPD's claim because CPD had failed to disclose Plaintiff's claims in its policy application, a circumstance that put CPD in breach of the Authorization Clause of the Tokio Marine policy and justified denial of the claim without resort to any subsequent documents. Barone Decl. Ex. C at Paras. 22-23. It may be inferred that, having seen this denial letter, Plaintiff's former counsel reasonably concluded that it was pointless to pursue a claim against the Tokio Marine policy, and reasonably refrained from objecting when that policy was not mentioned in CPD's initial disclosures.

CPD's counsel, however, testifies that he informed Plaintiff's former counsel, Helen Mauch, by telephone of the "existence of the [Policy] and the denial," and on this basis claims that it was incumbent on Plaintiff to object to CPD's initial disclosures and/or pursue discovery concerning possible insurance coverage. Barone Decl. at Paras. 28-29. Ms. Mauch does not recall any such conversation. Mauch Decl. Para. 4 (ECF Doc. No. 457). Again, the burden was on CPD to comply with Rule 26(a)(1)(D), not on Plaintiff to police CPD's compliance.

CPD also demands credit for its production to Plaintiff of a letter from the EPA mentioning an "Effective Date" and "Expiration Date" of something to do with "Financial Responsibility," from which IU's name had been redacted, and argues that this obscure reference put Plaintiff on notice to demand discovery of insurance. In fact, the failure to produce the document to which the EPA letter referred, and the redaction of IU's name from the EPA letter, were obviously intended

6

to make it difficult for Plaintiff to recognize the EPA letter as evidence of applicable insurance. Defense counsel "is not entitled to transform discovery . . . into a game of hide-and-seek." *Dacosta v. City of New York*, 296 F. Supp. 569, 595 (E.D.N.Y. 2017).

Finally, CPD argues that its concealment of the Policy did not prevent Plaintiff from seeking to amend the Complaint to include IU, because Plaintiff could have brought claims against the self-insured defendants at any time on the basis argued in the present motion. CPD Memo at 13-14. CPD thus seeks to elide the fact that Plaintiff's claim against IU is a "plain vanilla" NL 190 claim against an insurer and not tied in any way to Plaintiff's NL 190 claims based on self-insured status. The NL 190 claims are indeed "afterthought" claims based not on new facts but on a new legal argument premised on previously pleaded facts; as such, as argued below, they are ordinarily not considered to cause "undue delay" for purposes of F.R.Civ.P. 15(a).

**G. Plaintiff's State Court Claims Have No Bearing on the Present Motion.**

CPD attempts to "dirty up" Plaintiff's present motion by claiming that (a) Plaintiff's pending negligence claims against defendant CFI and Third-party Defendant GES are "similar to those already dismissed by this Court" and (b) that Plaintiff's pending state court Navigation Law § 181 claims against CPD and CFI concern "Dec. Spill No. 17-09286 and 'previous petroleum spills.'" CPD Memo at 18 – 19. These are cheap shots that should not affect the Court's analysis. As to the lawsuit under the Navigation Law, all of the alleged spills are well within the 3-year limitation period on which this Court relied in dismissing Plaintiff's §181 claims. *See* Lindquist Decl. Ex. E. The second state court lawsuit is not for negligence in allowing Spill No. 89-13000 to happen, but for the professional negligence of GES in its remediation of that spill through at least June, 2016, and against CPD for negligent supervision of GES. *See* Lindquist Decl. Ex. D. Such claims accrue on the last day professional services are provided under the doctrine of

continuous representation, under which a claim of negligence against an engineer "accrues upon the completion of performance under the contract . . . ." *Town of Wawarsing v. Camp, Dresser & McKee, Inc.*, 49 A.D.3d 1100, 1101 (3d Dep't 2008).

### H.  Plaintiff Has Not Unduly Delayed the Present Motion.

A motion to amend the pleadings that would require the court to modify a schedule established under F.R.Civ.P. 16(b) must be supported by "good cause."  Memo in Support at 4. This requirement does not, however, erase the court's duty under F.R.Civ.P. 15(a) to "freely give leave [to amend] when justice so requires."  The two rules must "balanced against" each other so that the purposes of each—respectively, allowing claims to be heard on their merits, and promoting "a measure of certainty in pretrial proceedings"—are achieved. *Enzymotic Ltd. V. NBTY, Inc.*, 754 F.Supp. 2d 527, 536 (E.D.N.Y. 2010); *Pagovich v. Moskowitz*, 865 F.Supp. 130, 134 (S.D.N.Y. 1994); *Parker v. Columbia Pictures Indus.*, 240 F.3d 326, 339-40 (2d Cir. 2000).  Thus to Rule 16(b)'s requirement that the movant show diligence must be added the non-movant's burden to show unfair prejudice. *Kassner v. 2d Ave. Delicatessen, Inc.*, 498 F.Supp. 229, 244 (2d Cir. 2007).

Where the reason for an amendment is that counsel has developed a new legal theory based on the same essential allegations as in the original complaint, amendment is normally permissible. *See Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 385 (2d Cir. 1968)(fact that amendment was "afterthought" inspired by recent caselaw did not justify denial of motion to amend); *Affiliated FM Ins. Co. v. Liberty Mech. Contrs., Inc.*, 2013 U.S. Distr. LEXIS 122030 at *18 (allowing amendment based on counsel's late recognition of legal issue); *Beckman v. United States Postal Serv.*, 79 F.Supp. 2d 394, 408 (S.D.N.Y. 2000)(ordinarily late amendment allowed to assert "newly-conceived claims"); *Neri v. Coughlin*, 1993 U.S. Dist. LEXIS 15892 at *20 (theory raised for first time in response to motion for summary judgment may be treated as

amendment of the complaint); *Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y. 1970)(allowing amendment under R. 15(a) where new theory was "afterthought of counsel.")

In the present case, amendment is sought in order to propose an alternative theory of recovery. Plaintiff does not ask to be allowed to make substantial new factual allegations beyond the self-insured status of these defendants; plaintiff simply asks that it be allowed to modify the complaint minimally in order to frame its legal argument. Little if any new discovery is required, since the only substantial modification of the allegations as to these defendants is that they are self-insured. Nor will the amendment cause any notable delay in the proceedings: discovery is ongoing, party depositions have yet to be taken, and trial is not anticipated for at least several months. *See Affiliated FM*, *supra*, 2013 U.S. Dist. LEXIS 122030 at 21 (allowing amendment under R. 16(b)(4), noting that proceedings would not be significantly delayed where discovery was ongoing and trial not anticipated for several months).

I. **The Court of Appeals's Decision in *Contact Chiropractic* does not Control the Present Case**.

Defendants rely on the Court of Appeals' decision in *Contact Chiropractic, P.C. v. New York City Tr. Auth.*, 31 N.Y.3d 187 (2018), to argue that NL 190 is subject to a 3-year limitation period. Their argument fails because (a) unlike the no-fault insurance law, the Navigation Law expressly provides that it must be liberally construed to effect its remedial purpose, (b) unlike the no-fault insurance law, NL §190 modifies an existing remedy rather than legislating a new right, and (c) the *Contact Chiropractic* Court did not intend to overturn *sub silentio* decades of Appellate Division case law holding that self-insurers in contexts other than the no-fault insurance law are held to the same legal standards as insurers.

In *Contact Chiropractic* the Court dealt with the "no-fault" provisions of Insurance Law Art. 51 (the "No-Fault Law"), which requires in relevant part that both automobile liability

9

insurance contracts and vehicle owners who are self-insured must provide coverage for losses arising from the operation in New York of a motor vehicle without regard to fault. Insurance Law § 5103(a)(1). The Court found that "the only requirement that defendant provide such remuneration to the [plaintiff's] assignee appears in relevant parts of the Vehicle and Traffic Law and the Insurance Law. Consequently, the source of this claim is wholly statutory, meaning that the three-year period of limitations in CPLR 214(2) should control this case." 31 N.Y.3d at 196-97. The present case, however, implicates a different rule that was not relevant to the holding in *Constant Chiropractic*: where a statute merely creates a new remedy, rather than a substantive right, the 3-year limitation period of CPLR 214(2) does not apply. *State Farm Mut. Auto. Ins. Co. v. Regional Tr. Serv.,* 79 A.D.2d 858 (4th Dep't 1980).

Navigation Law § 190 permits a person injured by a petroleum discharge to sue the insurer directly. A closely similarly remedy was available prior to enactment of NL § 190: under Insurance Law § 3420(a)(2), a plaintiff who has obtained a judgment against an insured defendant may sue the insurer directly for the covered amount of the judgment. The Supreme Court held on this basis in *State v. INA Underwriters Ins. Co.,* 133 Misc. 2d 430 (N.Y. Sup. Albany Co. 1986), that the limitation period applicable to NL § 190 was Since the effect of NL § 190 was simply to modify the remedy by allowing the plaintiff to sue the insurer directly without awaiting judgment against the insured, one New York court has held that CPLR 214(2) does not apply.

Defendants rightly point out that the Third Department in *State v. King Serv.*, 167 A.D.2d 777 (3d Dep't 1990), reached a contrary conclusion, holding in conclusory fashion that claims under NL § 190 concern injury to property and are therefore subject to the 3-year limitation period provided by CPLR 214(4). Where a federal court is confronted with a question of state law that has not been resolved by the state's highest appellate court, it "may 'predict' what the state's law

10

is, consulting any rulings of its intermediate appellate courts and trial courts . . . ." *Georgitsi Realty, LLC v. Penn-Starr Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012)(quoting *Windsor v. United States,* 669 F.3d 169, 177 (2d Cir. 2012). A federal court, however, is not obligated to follow the rulings of intermediate state courts where it "'find[s] persuasive evidence that the New York Court of Appeals, which has not ruled on [the] issue, would reach a different conclusion . . . .'" *Matana v. Merkin*, 989 F.Supp.2d 313, 321 (S.D.N.Y. 2013)(quoting 10 Ellicott Square Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 120 (2d Cir. 2011).

In choosing to follow holding in *Starr Foundation v. American International Group*, *Inc.*, 76 A.D.3d 25 (1st Dep't 2010), the Southern District in *Matana* emphasized First Department's "thoughtful reasoning." *Matana*, *supra*, 989 F.Supp. at 321. In contrast, the Third Department in *King. Services* engaged in no reasoning at all concerning the limitation period applicable to NL § 190. 167 A.D.2d at 779. If it had done so—especially with the benefit of the subsequent caselaw discussed at length in the Support Memo—it would probably have reached a different conclusion. *Id.*; *see in* Plaintiff's Memorandum at 5 - 9. Plaintiff respectfully submits that the carefully reasoned analysis of *INA Underwriters* supplies a better guide to predicting the Court of Appeals' eventual determination of the statute of limitations applicable to NL § 190 than does *King Services.*

The Court of Appeals held in *Matter of ELRAC, Inc. v. Exum,* 18 N.Y.3d 325 (2011), that self-insurance is "essentially contractual in nature . . . the situation is as though the [self-insurer] had written a policy of insurance to itself . . . ." *Id.* at 328. The *Contact Chiropractic* Court treated this language as dicta on the basis that in *Exum* the Court was interpreting the Workers Compensation Law and not the No-Fault Law, so that the *Exum* Court's strong assertions regarding the essentially contractual nature of self-insurance did "not bind" the *Contact Chiropractic* Court. *Contact Chiropractic*, 3 N.Y.3d at 197, fn. 2. The *Exum* Court, however, drew on the well-

11

established Court of Appeals precedent for the larger principle that the availability of self-insurance is "in no way intended to decrease the insurance protection" afforded by statute and that, by self-insuring, a defendant "undertook all the duties and responsibilities of an insurer."  18 N.Y.3d at 327 (*quoting Matter of Allstate Ins. Co. v. Shaw*, 52 N.Y.2d 818, 820 (1980)); *see ELRAC, Inc. v. Ward*, 96 NY2d 58, 77 (2001).  Numerous Appellate Division cases have applied these principles in various contexts, including in particular to hold that self-insurance is contractual in nature and that the 6-year limitation of CPLR 13(1) applies to claims against self-insurers.  *See* Plaintiff's Memorandum at 16-17.  The fact that the *Contact Chiropractic* Court broke with this line of precedent in the context of the no-fault insurance law does not justify a prediction that the Court will reverse this well-settled Appellate Division doctrine *sub silentio* outside the realm of the No-Fault Law.  It is especially doubtful that the Court will do so in light of Navigation Law § 195, which expressly requires that the law be "liberally construed to effect its purposes," including "providing for liability for damage sustained" as a result of petroleum discharges.  NL §§ 195, 171.  No such provision appears in the No-Fault Law.  *See* Ins. Law Art. 51.

Dated:  November 14, 2018                                       Respectfully submitted,

                                                                CERMELE & WOOD

                                                        By:    __/s/ Eric Lindquist_____
                                                                Eric Lindquist
                                                                EL4305
                                                                2 Westchester Park Drive, Ste. 110
                                                                White Plains, New York  10604
                                                                Tel. (914) 967-2753