# EXHIBIT D

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER**

---

THE PLUMBING SUPPLY, LLC d/b/a FAUCET WORKS
and FRANK SABIA,

　　　　　　　　*Plaintiffs*,

- against -

GROUNDWATER AND ENVIRONMENTAL SERVICES,
INC., and CPD NEW YORK ENERGY CORPORATION,

　　　　　　　　*Defendants*.

---

Index No.:

Date Purchased:

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANTS:**

　　**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer on plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

　　Plaintiff designates Westchester County as the place of trial based on the location of the property which is the subject of this action and the local in which all parties transacted business.

Dated:　　White Plains, New York
　　　　　October 19, 2018

　　　　　　　　　　　　　　　　　　　　**CERMELE & WOOD LLP**

　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　Mark Cermele
　　　　　　　　　　　　　　　　　　　　Eric Lindquist
　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　2 Westchester Park Drive, Suite 110
　　　　　　　　　　　　　　　　　　　　White Plains, New York 10604
　　　　　　　　　　　　　　　　　　　　(914) 967-2753
　　　　　　　　　　　　　　　　　　　　mark@cw.legal

**TO:**  Groundwater and Environmental Services, Inc.
440 Creamery Way, Suite 500
Exton, Pennsylvania 19341

CPD New York Energy Corporation
536 Main Street
New Paltz, New York 12561

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------------x

THE PLUMBING SUPPLY, LLC d/b/a FAUCET :   Index No.
WORKS and FRANK SABIA,                                                :

                    *Plaintiffs*,                                               :

      - against -                                                      :   **COMPLAINT**

GROUNDWATER AND ENVIRONMENTAL
SERVICES, INC., and CPD NEW YORK ENERGY   :
CORPORATION,

                   *Defendants*,                                  :
------------------------------------------------------------------ x

Plaintiffs, THE PLUMBING SUPPLY, LLC, d/b/a FAUCET WORKS ("Faucet Works"), and Frank Sabia, by their attorneys, CERMELE & WOOD LLP, as and for their Complaint against Defendant, Groundwater Environmental Services, Inc. ("GES"), and Defendant CPD New York Energy Corporation ("CPD") alleges as follows:

## THE PARTIES

1.     Plaintiff Faucet Works is a domestic limited liability company organized under Chapter 34 of McKinneys Consolidated Laws of the State of New York, having its principal place of business located at 395 White Plains Road, Eastchester, New York, 10709 (the "Faucet Works Site"). Faucet Works owns and operates a plumbing supply store on the Faucet Works Site.

2.     Plaintiff Frank Sabia is a natural person residing at 34 Vernon Drive, Scarsdale New York 10583 in the state of New York. Sabia is President and Sole Managing Director of The Plumbing Supply, Inc., d/b/a Faucet Works.

3.     Upon information and belief, Defendant GES is and was at all times relevant to the allegations set forth in the Complaint a corporation incorporated in the state of Pennsylvania

having a principal place of business at 44o Creamery Way, Suite 500, Exton, Pennsylvania 19341, and authorized to conduct business in the state of New York. GES is an environmental consulting firm.

4. Upon information and belief, Defendant CPD is a domestic corporation having its principal place of business at 536 Main Street, New Paltz, NY. CPD owns and operates, among others, a gasoline service station at 407 White Plains Road, Eastchester, New York (the "CPD Site").

## BACKGROUND

5. This action arises out of the conduct of CPD and its environmental consultant, GES, in the remediation of contamination of the Faucet Works Site caused by the migration of petroleum from the CPD Site to the soil and groundwater under the Faucet Works Site.

6. CPD operates a gasoline service station on the CPD Site.

7. The CPD Site is located north and immediately adjacent to the Faucet Works Site.

8. Petroleum contamination was reported at the CPD Site in November 1989 under New York Department of Environmental Control ("DEC") DEC Spill No. 89-13000.

9. At least nine (9) other reported petroleum spills have occurred at the CPD Site since November 1989, causing severe contamination of the soil and groundwater under the CPD Site.

10. Upon information and belief, ExxonMobil Oil Company ("EMOC") operated a gasoline service station on the CPD Site from a date prior to November 1989 until on or about January 13, 2011.

11. Upon information and belief, GES performed environmental services to EMOC concerning the CPI Site and the Faucet Works Site from at least 2002 until in or about January, 2011.

2

12. Upon information and belief, while employed by EMOC, GES designed, installed, operated and maintained a system (the "Faucet Works Remediation System") for remediating and monitoring the levels of VOCs, including BTEX and other toxic compounds, in the soil and ground under the Faucet Works Site and in the air in the building on the Faucet Works Site.

13. This action further arises out of petroleum contamination that has migrated from a second gasoline service station, located at 381 White Plains Road, Eastchester, New York, (the "CFI Site").

14. The CFI Site is located south and immediately adjacent to the Faucet Works Site.

15. There have been numerous reported petroleum releases at the CFI Site, from 1986 until most recently in 2017.

16. Upon information and belief, petroleum contamination at the CFI Site has migrated to the Faucet Works Site.

17. Upon information and belief, GES has performed petroleum investigating and monitoring work at the CFI Site beginning in approximately 1999.

**HEALTH RISKS OF THE CONTAMINATION**

18. The hazardous substances contaminating the CPD Site and the CFI include non-aqueous phase liquids ("NAPL"), or "free product" petroleum.

19. Volatile Organic Compounds ("VOCs") and other toxic petroleum compounds have migrated from the CPD Site and the CFI Site and permeated the soil and groundwater under the Faucet Works Site.

20. VOC contamination of the soil and groundwater under the CPD Site, the CFI Site and the Faucet Works Site includes benzene, toluene, ethylbenzene, and xylene ("BTEX").

21. VOCs such as BTEX, even at low levels, pose a risk of chronic health effects, especially due to long-term exposure.

22. Immediate exposure to VOCs can cause eye and respiratory tract irritation, headaches, dizziness, visual disorders, fatigue and memory impairment.

23. Potential long-term effects of exposure to VOCs include damage to the liver, kidneys and central nervous system and the development of cancer.

### THE FPA AND THE GES PROJECT

24. Upon information and belief, on or about January 13, 2011, CPD entered into a Fixed Price Remediation Agreement (the "FPA") to govern the services of GES in performing remediation, monitoring, analysis and reporting activities on the CPD Site and the Faucet Works Site (the "GES Project").

25. An objective of the GES Project was to enable CPD to obtain from the DEC a "no further action letter" indicating that all contamination affecting the Faucet Works Site as a result of the discharge of petroleum on the CPD Site had been investigated and remediated to the applicable legal standards and that no continuing violation of applicable state or federal environmental laws existed based on DEC Spill No. 89-13000.

26. Upon information and belief, the GES Project was intended, in whole or in part, to fulfill the terms of an environmental remediation plan approved by the New York Department of Environmental Conservation (the "DEC") in connection with DEC Spill No. 89-13000.

### GES'S BAD FAITH

27. Upon information and belief, as early as 1999, GES performed petroleum contamination remediation services at the CFI Site on behalf of Exxon Company, U.S.A. ("ECUSA"), a predecessor of CFI in ownership of the CFI Site.

4

28. Upon information and belief, no later than December, 2004, GES concluded that contamination of the CFI Site was migrating to the Faucet Works Site.

29. Upon information and belief, in or about September, 2007, GES submitted to DEC a proposed work plan referring to potential petroleum contamination of the Faucet Works Site originating from the CFI Site.

30. In May, 2008, GES submitted a report to the DEC documenting petroleum contamination in soils and groundwater along the boundary between the Faucet Works Site and the CFI Site.

31. GES's May 2008 Report states that contamination of the Faucet Works Site may have originated on from the CFI Site.

32. Upon information and belief, prior to January, 2011, when it entered into the FPA with CPD, GES had access to documents prepared by Geologic Services Corporation, an environmental firm working on behalf of ECUSA, indicating that petroleum contamination from the CFI Site was migrating toward the Faucet Works Site.

33. Upon information and belief, when it entered into the FPA with CPD, GES failed to inform CPD that GES had identified the CFI Site as a source, or a potential source, of contamination of the Faucet Works Site.

34. As a part of the scope of work under the FPA, GES was required to investigate the potential for a link between the petroleum contamination of the CFI Site and the Faucet Works Site.

35. Upon information and belief, when it assessed the contamination of the Faucet Works Site in the initial stages of the GES Project, GES acquired information suggesting that the

5

CFI Site was a likely source of contamination of the Faucet Works Site but failed so to notify CPD or the DEC.

36. Upon information and belief, GES designed the Remediation System solely to address toxic petroleum vapors exclusively originating from contamination of the CPD Site.

37. Upon information and belief, in designing and implementing the scope of work under the FPA, GES deliberately relied upon monitoring wells close to the boundary between the CPD Site and the Faucet Works Site, and not on monitoring wells along the boundary between the CFI Site and the Faucet Works Site.

38. Upon information and belief, GES was motivated to design the Remediation System to focus on contamination migrating from the CPD Site because under the FPA it would receive payment for remediation for DEC Spill No. 89-13000 only when DEC closed that spill number.

39. Upon information and belief, at some point prior to its negotiation and execution of the FPA, GES entered into a lucrative service agreement with CFI for environmental services on a large number of sites owned by CFI.

40. Upon information and belief, CFI instructed GES not to investigate CFI as a potential source of contamination of the Faucet Works Site despite the contrary requirement of the FPA.

41. Upon information and belief, GES obeyed CFI's instruction not to pursue CFI as a potential source of contamination because of the value of the business relationship between GES and CFI.

42. Upon information and belief, GES emphasized data from monitoring wells near the boundary between CPD and the Faucet Works Site, and ignored or de-emphasized data from

monitoring wells near the boundary between CPD and the Faucet Works Site showing higher concentrations of VOCs than was found in the CPD wells, to make it appear that all of the contamination of the Faucet Works Site had migrated from the CPD Site.

43. Upon information and belief, GES continued throughout the GES Project to submit its reports to DEC exclusively under DEC Spill No. 89-13000, which concerned a spill on the CPD Site, despite GES's knowledge that the CFI Site was a likely source of contamination of the Faucet Works Site.

44. GES knew and intended that the remediation and monitoring system operated and maintained on the Faucet Works Site would not be effective to identify or remediate contamination coming from the CFI Site.

45. GES intentionally and with reckless disregard for the health of Plaintiff Frank Sabia, and that of the employees and customers of Plaintiff Faucet Works, prolonged their exposure to BTEX and other hazardous compounds in order to obtain quicker payment from CPD while preserving is business relationship with CFI.

46. But for GES's callous and reckless conduct as described above a proper remediation and monitoring system would have been implemented on the Faucet Works Site that would have prevented severe damage to Plaintiff Frank Sabia's health as set out in Plaintiffs' First Cause of Action.

**NEAR PRIVITY**

47. The GES Project was intended to benefit Plaintiffs personally by (a) returning the Faucet Works Site to its condition prior to DEC Spill No. 89-13000, thus restoring property value lost as a result of the contamination of the Faucet Works Site, and (b) eliminating the health risk to Plaintiff Frank Sabia and the employees and customers of Plaintiff Faucet Works from toxic

7

fumes being released on the Faucet Works Site as a result of the migration of petroleum contamination from the CPD site.

48. A significant portion of the GES Project was to be performed on the Faucet Works Site for the personal benefit of Plaintiffs, including the operation and maintenance of equipment for the filtration and monitoring of air and water contamination, and including responding to calls from Plaintiffs concerning malfunctioning equipment, flooding, and increased petroleum odors on the Faucet Works Site.

49. At all relevant times GES was aware that the GES Project was intended for the specific purposes of remediating the effects of petroleum contamination on the Faucet Works property and protecting the health of persons, including Plaintiff Frank Sabia, who were frequently or continually exposed to toxic fumes caused by the migration of petroleum contamination from the CPD Site to the Faucet Works Site.

50. Plaintiffs relied upon GES's professional skill and ability in implementing the GES Project to make and keep the Faucet Works premises safe for human occupation, and in particular to protect the health of Plaintiff Frank Sabia.

51. GES was at all relevant times aware that Plaintiffs relied upon GES's proper professional implementation of the GES Project, as shown by (a) GES's participation in meetings with Plaintiffs and Plaintiffs' professional advisors concerning the adequacy of the GES Project to effect the proper remediation of the Faucet Works Site, (b) GES's conduct in responding to Plaintiffs' calls concerning equipment failure, flooding and increased petroleum odors, and (c) GES providing to Plaintiffs from time to time copies of its written reports to CPD concerning its activities on the Faucet Works Site.

52. Based on the foregoing facts, GES was at all relevant times in "near privity" with Plaintiffs in respect of the NFA and the GES Project and they are therefore entitled to recover against GES for professional negligence.

## CONTINUOUS REPRESENTATION

53. The GES Project commenced at or about the time CPD and GES executed the FPA in January, 2011.

54. The GES Project continued without interruption until GES ceased providing environmental remediation, monitoring and reporting services on the Faucet Site in or about June, 2016.

55. The continuous professional relationship between CPD and GES was in connection with the particular matter from which Plaintiffs' professional negligence claim set forth in its First and Second Causes of Action arises, to wit, the provision of environmental engineering services for the benefit of Plaintiffs in the course of the GES Project as contemplated by the FPA.

56. At all times during the GES Project, Plaintiffs were entitled to rely on GES's professional ability and good faith, and Plaintiffs could not reasonably have been expected to question and assess the manner in which GES implemented remedial measures under the FPA.

57. Plaintiffs did rely on GES's professional ability and good faith, and Plaintiffs did not reasonably expect to question and assess the manner in which GES implemented remedial measures under the FPA.

58. Based on the foregoing facts, Plaintiffs are entitled to recover damages sounding in professional negligence against GES throughout the period of the GES Project under the doctrine of continuous representation.

9

## JOINT AND SEVERAL LIABILITY OF CPD AND GES

59. Defendant CPD had a duty to supervise and instruct Defendant GES in the performance of the GES Project.

60. Plaintiffs put Defendant CPD on notice of GES's professional negligence as described above by verbal and written complaints.

61. Defendant CPD failed to use reasonable care in the supervising GES in the latter's performance of the GES Project.

62. Defendant CPD's negligent supervision of GES proximately caused Plaintiffs' damages as described in the First and Second Causes of Action.

63. Defendant CPD failed to use reasonable care in giving instruction to GES concerning the latter's performance of the GES Project.

64. Defendant CPD's negligence in giving instruction to GES proximately caused Plaintiffs' damages as described in the First and Second Causes of Action.

65. Defendant CPD was under a statutory duty to perform or control the work comprising the GES Project under the federal Resource Conservation and Recovery and the New York Navigation Law.

66. Defendant CPD knew or should have anticipated that the GES Project involved special dangers inherent in the work, to wit, the risk that negligent performance of the GES Project was likely to cause illness or injury due to exposure to VOCs, including BTEX and other toxic compounds, as well as loss of value of the Faucet Works Site, and the commercial turnover and business goodwill of Plaintiff Faucet Works.

67.     Based on the foregoing facts, Defendant CPD is vicariously liable, jointly and severally, for the negligence of its contractor, GES, as alleged in the First and Second Causes of Action.

### FIRST CAUSE OF ACTION
(Professional Negligence Against GES and CPD on behalf of Plaintiff Frank Sabia)

68.     Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

69.     In the course of its performance of the GES Project Defendant GES failed to exercise the care, skill, and diligence commonly possessed and exercised by environmental engineers under similar circumstances.

70.     In particular, but without limitation, GES was negligent in that it (a) used the wrong type of piping to convey contaminated water to the filtration system, causing rusting and leakage that in turn caused flooding and damage to electrical equipment necessary for the proper functioning of the Remediation System, (b) used the wrong size of piping to carry contaminated water from the Remediation System's sump pump to the discharge flow meter, causing the meter to clog and back up the system, which in turn caused constant flooding of the Faucet Works Site basement, (c) used filters of the wrong gauge that were unable to handle the particulate matter in the contaminated water, causing the filters and piping to clog and back up the system, which in turn caused constant flooding of the basement, (d) failed to maintain the filtration system properly by changing filters regularly and cleaning the filtration system, causing clogs which caused constant flooding of the basement, (e) attaching the Remediation System discharge line to a storm sewer instead of a sanitary sewer, so that when the discharge line clogged due to improper design, installation and maintenance of the Remediation System, it caused rainwater mixed with

11

contaminated water to flood the basement, and (f) ignoring Remediation System alarm signals so that its responses to flood conditions were delayed.

71. GES's negligent installation, maintenance and operation of the Remediation System caused the Faucet Works Site basement to be flooded constantly with water contaminated with high levels of VOCs, including BTEX and other toxic compounds.

72. The constant flooding of the Faucet Works Site basement with contaminated water caused vapors containing BTEX and other toxic compounds to permeate the air in the basement and first floor of the Faucet Works Site.

73. Plaintiff Frank Sabia was continuously exposed throughout the period of the GES Project to air contaminated with BTEX and other toxic compounds as a result of the flooding of the Faucet Works Site basement with contaminated water as described above.

74. Plaintiff Frank Sabia's exposure to BTEX and other toxic compounds as described above has proximately caused him to suffer severe health problems, including heart disease resulting in a heart attack in 2017, chronic neurological damage, impaired vision, damage to his liver and kidneys, chronic fatigue, and depression.

75. By deliberately concealing and failing to remedy the contamination migrating from the CFI Site, thus prolonging the exposure of Plaintiff Frank Sabia and the employees and customers of Plaintiff Faucet Works to BTEX and other toxic compounds, GES acted with willful or wanton negligence, recklessness, and/or conscious or reckless disregard of Plaintiffs' rights.

76. On the facts set forth above Plaintiff Frank Sabia is entitled to recover against GES and CPD, jointly and severally, for his physical injuries, pain and suffering, mental anguish, loss of consortium, medical costs and other expenses proximately caused by GES's professional

negligence, and punitive damages, in an amount to be proven at trial but in any event not less than $5,000,000.

## SECOND CAUSE OF ACTION
(Negligence against GES and CPD on behalf of Plaintiff Faucet Works)

77. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

78. Plaintiff Faucet Works is the sole owner the Faucet Works Site.

79. The constant flooding of the Faucet Works Site basement caused by GES's professional negligence as set forth above has caused offensive odors and dangerous environmental conditions on the Faucet Works Site.

80. The offensive odors and dangerous environmental conditions described above have caused a severe diminution of market value of the Faucet Works Site and of its commercial turnover and have damaged its business goodwill.

81. On the facts set forth above Plaintiff Faucet Works is entitled to recover against GES and CPD, jointly and severally, for the damage to its assets as described above proximately caused by GES's professional negligence, in an amount to be proven at trial but in any event not less than $2,000,000.

## THIRD CAUSE OF ACTION
(Breach of Contract Against GES on Behalf of
Plaintiff Faucet Works as a Third-Party Beneficiary)

82. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

83. The scope of work under FPA Exhibit C noted that "[i]mpacts to the adjoining property [i.e., the Faucet Works Site] building's sump resulted in the installation of LGACs

13

[Liquid-phase granular activated carbon, referring to the groundwater filters on the Faucet Works Site] and a sump vent."

84. The scope of work under FPA Exhibit C included "O&M [operation and maintenance] of the Faucet Works sump system."

85. The "Faucet Works sump system" referenced in Exhibit C to the FPA is the remediation and monitoring system installed on the Faucet Works Site as described above.

86. Under Section 3(a) of the FPA GES was required to "complete all Remediation Activities . . . necessary to achieve NFA Status at the Properties." As previously noted, "NFA" stands for "no further action" and refers to official notice from the DEC that no further remedial measures are required at a given site.

87. The CPD Site is one of the Properties referenced in Section 3(a) of the RFP.

88. NFA status could not be achieved for the CPD Site unless the levels of VOCs, including BTEX and other toxic compounds, being detected by the Remediation System fell to within standards acceptable to the DEC under applicable laws and regulations.

89. The FPA was intended to benefit Plaintiff Faucet Works by requiring GES to operate and maintain the Remediation System so that the levels of VOCs, including BTEX and other toxic compounds, on the Faucet Works Site would be reduced to legally acceptable levels, thus remedying the damage to the Faucet Works Site and restoring its market value.

90. The scope of work set out in Exhibit C to the FPA required GES to "pursue CFI to assume the Faucet Works liability."

91. The "Faucet Works liability" referenced in Exhibit C to the FPA is the liability for petroleum contamination of the Faucet Works Site as complained of herein.

14

92. The FPA was intended to benefit Plaintiff Faucet Works by requiring GES to establish CFI's liability for petroleum contamination of the Faucet Works Site, and, consequently, CFI's obligation to remedy such contamination under applicable state and federal law.

93. Remediation of the damage to the Faucet Works Site caused by contamination migrating from the CFI Site would benefit Plaintiff Faucet Works by increasing the market value of the Faucet Works Site as compared with its value in a contaminated state.

94. Section 6 of the FPA required GES to perform the scope of work, including remediation of the Faucet Works Site by continued operation of the Remediation System, "with the degree of skill and care ordinarily exercised by qualified professionals performing the same type of services under similar conditions . . . ."

95. The FPA was intended to benefit Plaintiff Faucet Works by ensuring that GES performed the GES Project, including but not limited to the operation and maintenance of the Remediation System, with ordinary professional care.

96. Based on the foregoing facts Plaintiff Faucet Works is an intended third-party beneficiary of the FPA entitled to sue GES for breach of the provisions of the FPA intended to benefit Plaintiff Faucet Works.

97. As previously alleged, GES failed to perform the GES Project using ordinary professional care.

98. By failing perform the GES Project using ordinary professional care GES breached the FPA.

99. GES's failure to maintain and operate the Remediation System caused reasonably foreseeable damage to Plaintiff Faucet Works by making the system ineffective to reduce the concentration of VOCs, including BTEX and other toxic compounds, and offensive odors caused

15

by CPD's and CFI's petroleum contamination of the Faucet Works Site, in turn reducing the market value of the Faucet Works Site and of Plaintiff Faucet Works's commercial turnover, and damaging the company's business goodwill.

100. GES breached the FPA by failing to "pursue CIF to assume the Faucet Works liability," as required under the scope of work provided in Exhibit C to the FPA.

101. GES's breach of the FPA by failing "to pursue CIF to assume the Faucet Works liability" caused reasonably foreseeable damage to Plaintiff Faucet Works by preventing effective remediation of the petroleum contamination of the Faucet Works Site, thus preventing recovery of its market value as compared with its market value in an uncontaminated state.

102. Based on the foregoing facts, Defendant GES is liable to Plaintiff Faucet Works for breach of the FPA in an amount to be determined at trial but in any event not less than $2,000,000.

**WHEREFORE**, Plaintiffs pray for relief as follows:

(1) Judgment in favor of Plaintiff Frank Sabia against GES and CPD, jointly and severally, on Plaintiffs' First Cause of Action, in an amount to be determined at trial but in any event not less than $5,000,000;

(2) Judgment in favor of Plaintiff Faucet Works against GES and CPD, jointly and severally, on Plaintiff's Second Cause of Action, in an amount to be determined at trial but in any event not less than $2,000,000;

(3) Judgement in favor of Plaintiff Faucet Works against GES on Plaintiffs' Third Cause of Action, in an amount to be determined at trial but in any event not less than $2,000,000; and

(4) Granting such other or further legal or equitable as this Court shall deem just and proper in the premises.

16

Dated: White Plains, New York
October 19, 2018

                                      Yours, etc.,
                                      **CERMELE & WOOD LLP**

                                      _____
                                      Mark Cermele
                                      Eric Lindquist
                                      *Attorneys for the Plaintiffs*
                                      2 Westchester Park Drive, Ste. 110
                                      White Plains, New York 10604
                                      (914) 967-2753